**HOWARD FIELDS & ASSOCIATES, a California corporation, Plaintiff/Counterclaim Defendant,**

**v.**

**GRAND WAILEA COMPANY, a Hawaii limited partnership, John Does 1–20; Jane Does 1–20; Doe Corporations 1–20; Doe Partnerships 1–20; Doe Associates 1–20; Doe Governmental Agencies 1–20; and Other Entities 1–20, Defendants/Counterclaimants,**

**and**

**Howard J. Fields, an individual; Fletcher Pacific Construction Co., Ltd., a Hawaii corporation; Chapman Desai, Sakata, Inc., a Hawaii corporation d/b/a CDS International; All Pool and SPA, Inc., a Hawaii corporation; Water Components, Inc., a California corporation; John Does 21–40; Jane Roes 21–40; Roe Corporations 21–40; Roe Partnerships 21–40; Roe Associates 21–40; Roe Governmental Agencies 21–40; and Other Entities 21–40, Additional Counterclaim Defendants.**

No. 92–00704.

United States District Court,
D. Hawaii.

Feb. 18, 1993.

Randall K. Schmitt, McCorriston Miho Miller & Mukai, Honolulu, HI, for plaintiff Howard Fields & Associates, a California corporation.

Gilbert S. Coloma–Agaran, John P. Manaut, Thomas R. Sylvester, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Honolulu, HI, Gilbert S. Coloma–Agaran, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Wailuku, HI, for defendant Grand Wailea Co., a HI Ltd. Partnership.

## *ORDER GRANTING DEFENDANT'S MOTION FOR STAY PENDING ARBITRATION*

KAY, Chief Judge.

### I. BACKGROUND

On February 16, 1988, Howard Fields & Associates (Plaintiff) and Grand Hyatt Wailea (Defendant) entered into a "Consulting Services Agreement" (Agreement). Under the Agreement, and a July 31, 1989 amendment to the Agreement, Plaintiff was to provide design, consulting, and construction administration services to Defendant. The Agreement contained a dispute resolution clause that provided, in part:

Owner and Consultant recognize that it is in their mutual best interests to resolve and settle any claims or disputes between them in a cooperative and expeditious manner. Accordingly, Owner and Consultant hereby agree to meet promptly to negotiate, mediate, or arbitrate any claim, dispute, or other matter in question arising out of or relating to this Agreement.

Additionally, the clause provided that the prevailing party in "any suit, action or arbitration [that is] commenced in connection with any dispute arising out of this Agreement" would be entitled to an award of reasonable costs and attorney's fees. Finally, the Agreement contained a choice of law clause that stated that Hawaii law "will govern ... remedies for breach or any other claims related to this Agreement."

Subsequently, in November 1991, a fee dispute developed between Plaintiff and Defendant. Pursuant to the Agreement, the parties sought to negotiate the dispute. However, the negotiations proved unsuccessful. Thereafter, on November 5, 1992, Plaintiff filed suit against Defendant for damages arising out of the dispute. Jurisdiction was based on this court's diversity jurisdiction. On December 2, 1992, Defendant filed its answer and asserted a counterclaim against Defendant and other new parties. Defendant also stated in its answer that Plaintiff was subject to binding arbitration.

Defendant ultimately amended its counterclaim without leave of court in order to assert a counterclaim against Plaintiff and a third party claim against the other parties. Plaintiff has subsequently filed numerous requests for discovery. These requests have been stayed until March 1, 1993, pending the outcome of the instant motion.

Finally, on January 14, 1993, Defendant filed a demand with the American Arbitration Association for arbitration and moved this Court for a stay pending arbitration. Therefore, it is necessary to determine if the instant proceeding should be stayed pending arbitration. Plaintiff first opposes such a stay because Plaintiff asserts that it has not consented to arbitration. Alternatively, Plaintiff maintains that Defendant has waived any right to arbitration by negotiating with Plaintiff, by delaying its demand for arbitration, and by filing an answer and counterclaim in the instant lawsuit.

### II. DISCUSSION

The Federal Arbitration Act (Act) states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (1970). The Act applies to "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2 (1970). "Commerce" is defined as interstate commerce. *See* 9 U.S.C. § 1 (1970). It is first necessary to determine whether the federal act or any applicable state arbitration law will govern the case at bar.

1. Applicability of the Federal Arbitration Act

 Federal law preempts state law on issues of arbitrability. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Three Valleys Mun. Water Dist. v.*

*E.F. Hutton,* 925 F.2d 1136, 1139 (9th Cir. 1991). "Although state law is usually adopted in diversity cases, it is not followed in an action to enforce the arbitration provision of a contract in interstate commerce." *Huber, Hunt & Nichols v. Architectural Stone Co.,* 625 F.2d 22, 25 (5th Cir.1980).

■ In the case at bar, the Agreement involves consulting services between corporations from different states. The Agreement also contains a clause that provides for the application of Hawaii law to any dispute. If the transaction between the parties is one that implicates interstate commerce, *Moses H. Cone, Three Valleys,* and *Huber, Hunt & Nichols* suggest that the Federal Arbitration Act will preempt the application of state arbitration law. If, however, the transaction does not implicate interstate commerce, the *Erie* rules governing diversity jurisdiction will apply. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If *Erie* governs, this court must apply the forum state's substantive law, including choice of law rules. *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The first inquiry, therefore, must be whether the instant transaction involves interstate commerce. The parties have failed to address this issue.

*a. Commerce*

The U.S. Supreme Court has held that interstate commerce is implicated by a consulting services contract between corporations incorporated in different states. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967). In that case, the plaintiff purchased a paint company from the defendant. Some weeks later, the plaintiff contracted with the defendant for consulting services related to the transfer of the purchased assets. The Court held that the consulting services were interstate commerce for purposes of the Act. The Court stated that it was the intent of Congress that the Act apply to more than the shipment of actual goods. *Id.*

In *Del E. Webb Const. v. Richardson Hosp. Authority,* 823 F.2d 145 (5th Cir.1987), the court affirmed that construction supervision and construction contracts implicated commerce and fell within the ambit of the federal act. The court relied on the fact that:

> the contract involved persons from different states; employees of the plaintiff traveled interstate; the interstate mails were used to facilitate the work of the plaintiff's subcontractors; and materials used in the construction of the defendant's facilities were manufactured and moved in interstate commerce.

*Id.* at 147; *see also Mesa Operating Ltd. Partnership v. Louisiana Interstate Gas Corp.,* 797 F.2d 238, 243 (5th Cir.1986) (stating that "[c]itizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under [the federal act]. Such a contract necessitates interstate travel of both personnel and payments. Commerce under the [federal act] is not limited to interstate shipment of goods ... but includes all contracts 'relating to interstate commerce.'") (*quoting Prima Paint,* 388 U.S. at 401 n. 7, 87 S.Ct. at 1805 n. 7); *Snyder v. Smith,* 736 F.2d 409, 418 (7th Cir.1984) (holding that a real estate partnership involved "commerce" within the meaning of the Act where the real estate at issue was located in Texas and the partners lived in Illinois, maintained a bank account in Illinois, and borrowed money from an Illinois bank).

Additionally, courts have treated construction contracts as implicating commerce. *See Dunn Const. Co. v. Sugar Beach Condominium Ass'n,* 760 F.Supp. 1479 (S.D.Ala.1991); *Century Steel Erectors, v. Aetna Cas. & Surety Co.,* 757 F.Supp. 659 (W.D.Pa.1990). In both *Dunn* and *Century Steel,* construction contracts containing arbitration clauses came before district courts. In both cases, the courts relied upon the Federal Arbitration Act as the applicable law.

■ In the case at bar, Plaintiff and Defendant, like the parties in *Prima Paint,* are corporations that are incorporated in different states. The parties entered into a con-

tract for consultation and construction administration services. The parties have traveled between Hawaii and California and can be presumed to have used the mails. Therefore, given the intent of Congress that the Federal Arbitration Act apply to more than the mere shipment of goods as well as the tendency of courts to apply the federal act in construction contract cases, the federal act applies in the case at bar. The *Snyder* decision instructs that the "involving commerce" language of the federal act "must be construed very broadly." *Snyder*, 736 F.2d at 418. It is next necessary to determine if the choice of law clause in the contract will prevent the application of the federal act.

### b. Choice of Law clause

■ It is arguable that the choice of law clause in the contract should govern whether the federal or state arbitration statute is applicable to the case at bar. In *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the United States Supreme Court held that even if a contract involves commerce, implicating the federal act, state arbitration law may still apply if the parties specifically contract to be bound by the arbitration laws of a particular state. In *Volt*, the parties had placed a choice of law clause in a construction contract. The clause stated that the contract would be governed by the law of "the place where the Project is located." Although the contract was found to involve interstate commerce, the California Court of Appeals determined that the clause was a choice of law for arbitration purposes and held that this choice was not preempted by the federal act.

The Supreme Court affirmed that the choice of law clause was not preempted by the federal act. The Court maintained that the application of the California act would be consistent with the goals and purposes of the federal act. *Volt*, 489 U.S. at 476, 109 S.Ct. at 1254. The Court stated that

[w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the [federal act].... By per-

mitting the courts to 'rigorously enforce' such agreements according to their terms ... we give effect to the contractual rights and expectations of the parties without doing violence to the policies behind the [federal act].

*Volt*, 489 U.S. at 479, 109 S.Ct. at 1256.

In the case at bar, the parties have included a choice of law provision in the Agreement. Specifically, the Agreement states that:

[u]nless otherwise provided, the law of the State of Hawaii, where the Project is located, will govern the validity of this Agreement, its interpretation and performance, and remedies for breach or any other claims related to this Agreement.

Pursuant to *Volt*, it could be argued that the quoted choice of law clause would make Hawaii arbitration law applicable to the case at bar.

However, in *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056 (9th Cir.1991), the court analyzed a contract that was similar to the instant Agreement because it contained an arbitration clause and a choice of law clause. The defendant asserted that *Volt* mandated that the choice of law clause should govern which arbitration statute was applicable. The Ninth Circuit disagreed:

[Defendant's] reliance on *Volt* is inapposite. The Supreme Court did not say a state choice of law provision that does not expressly encompass state arbitration rules, does so by operation of law. The court merely said that it would not disturb a state court's factual determination that the parties to the contract in *Volt* intended, to invoke California arbitration rules.

*Id.* at 1062 (citing *Volt*, 489 U.S. at 479, 109 S.Ct. at 1256). The *Todd Shipyards* court then reaffirmed that arbitrability in cases subject to the federal act is governed by federal law. *Id.* (citations omitted). Accordingly, the court refused to apply *Volt* beyond the exact circumstances of the *Volt* case and would likely apply federal law here despite the existence of a choice of law clause.

Therefore, this Court holds that the Federal Arbitration Act applies in the case at bar. However, even in the event that the

Federal Arbitration Act does not govern the case at bar, the State of Hawaii has enacted an arbitration act that is virtually the same as the federal act. *See* Haw.Rev.Stat. § 658–5 (1988). It states:

> If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the circuit court, upon being satisfied that the issue involved in the action or proceeding is referable to arbitration under such an agreement in writing, shall stay trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration.

*Id.* Analysis under either act is essentially the same. Therefore, the essential analysis is whether Plaintiff agreed to arbitration and, if so, whether Defendant's actions constitute a waiver of arbitration.

**2. Agreement to Arbitrate**

██ There is a strong congressional policy favoring arbitration. *See Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. at 941; *see also Howard Elec. & Mech. v. Frank Briscoe Co.,* 754 F.2d 847, 850 (9th Cir.1985). The Ninth Circuit has held that two principles guide the determination of arbitrability: "First, the duty to arbitrate is a contractual obligation which is governed by general principles of contract interpretation. Second, when the language is ambiguous or unclear, any doubts about the scope of arbitration should be resolved in favor of arbitration." *Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447, 1449 (9th Cir.1986) (citing *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. at 941).

The Supreme Court has stated that "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citing *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), and *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 570–71, 80 S.Ct. 1343, 1364–65, 4 L.Ed.2d 1403 (1960)); *Three Valleys,* 925 F.2d at 1139 (9th Cir.1991) (citations omitted). "[A]s with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985); *Three Valleys,* 925 F.2d at 1139.

**a. Parties Intentions**

In the case at bar, Plaintiff first asserts that "there is no agreement in writing mandating arbitration which would permit this court to be satisfied that the suit is referable to arbitration." (Pl.'s Opp.Mem. at 6). Plaintiff maintains that because the dispute resolution provision does not use mandatory language (e.g., "must" or "shall") but instead provides for "negotiat[ion], mediat[ion], *or* arbitrat[ion]", the suit is not referable to arbitration. (*See* Agreement ¶ 12) (emphasis added). In other words, because arbitration is listed as only one potential method of dispute resolution, Plaintiff argues that the Act does not apply and the proceeding may not be stayed. Plaintiff supports its contention by citing cases where courts have ordered arbitration. *See Three Valleys,* 925 F.2d at 1136; *Campeau Corp. v. May Dept. Stores,* 723 F.Supp. 224 (S.D.N.Y.1989). In those cases, the arbitration clauses at issue contained mandatory language. *See, e.g., Three Valleys,* 925 F.2d at 1138 (quoting arbitration clause in contract which stated that "all controversies … *shall* be determined by arbitration.") (emphasis added).

Additionally, Plaintiff avers that the dispute resolution clause in the Agreement allows litigation as one method of dispute resolution because it provides that the prevailing party in *"any suit,* action or arbitration" shall be entitled to recover attorneys fees and costs. (*See* Agreement ¶ 12) (emphasis added). Plaintiff maintains that because arbitration is only an option and litigation was foreseen, the Agreement does not require the parties to arbitrate.

Conversely, Defendant argues that it was the intention of the parties to arbitrate. Defendant states that when the parties executed the original contract, Defendant under-

stood that any dispute would be resolved through arbitration if efforts to negotiate failed. (Hayashi Aff. ¶ 4). The dispute resolution clause states that "it is in [the parties] mutual best interests to resolve and settle any claims or disputes between them in a cooperative and expeditious manner." Agreement ¶ 12. Defendant asserts that this demonstrates the agreement of the parties to avoid litigation.

■ The dispute resolution clause clearly indicates that the parties accepted that arbitration was a potential method of dispute resolution. Likewise, the portion of the clause that states that it is in the best interests of the parties to resolve their problems cooperatively and expeditiously suggests the intention of the parties to consider arbitration as a potential remedy. Therefore, Plaintiff's assertion that the parties did not agree to arbitrate is without merit. The parties did agree to arbitrate, at least as one potential method of dispute resolution. The dispute resolution clause indicates that the parties only wished to litigate as a last resort. Therefore, because the parties did agree to arbitrate, it is necessary to decide if the fact that arbitration was not the exclusive remedy prevents this Court from ordering a stay pending arbitration.

### b. Exclusive Remedy

Plaintiff asserts that because the dispute resolution clause does not contain "mandatory" language, the instant case is not referable to arbitration. Plaintiff cites a Hawaii Supreme Court decision which states that:

> where arbitration is not made a 'condition precedent to any right of action' or where 'arbitration is not the exclusive remedy ... the existence of an agreement to arbitrate will not preclude the bringing of a lawsuit by one of the parties to the agreement.'

*Gregg Kendall & Assoc., Inc. v. Kauhi*, 53 Haw. 88, 93, 488 P.2d 136, 140 (1971).

Most arbitration case law deals with arbitration clauses that contain definite language making arbitration the sole method of dispute resolution. *See, e.g., Three Valleys*, 925 F.2d at 1138 (quoting clause which states that disputes "shall" be determined by arbitration). However, research has revealed no federal cases which hold that the existence of a choice of dispute resolution methods precludes ordering arbitration.

Plaintiff relies on the language in *Kauhi* which seems to say that unless arbitration is made the only remedy, a lawsuit can be brought. However, Plaintiff clearly ignored the rest of the Hawaii Supreme Court's opinion. The court noted the strong public policy favoring arbitration and held that even if arbitration is not the exclusive remedy, the dispute may still be referable to arbitration. 53 Haw. at 93, 488 P.2d at 140. The court held that because the agreement in that case specified arbitration as one potential method of dispute resolution, the dispute was referable to arbitration. *See id.* at 94, 488 P.2d at 140. The court concluded that the trial judge erred by not heeding the strong public policy favoring arbitration and refusing to compel arbitration in accordance with the Hawaii arbitration statute. *Id.*

In turning to the case at bar, the rationale of the *Kauhi* court applies equally well to the Federal Arbitration Act. There is a strong public policy favoring arbitration and the courts are instructed to interpret contracts in favor of arbitration. *See Moses v. Cone*, 460 U.S. at 24, 103 S.Ct. at 941; *Three Valleys*, 925 F.2d at 1139. The federal act requires a district court to stay any "suit or proceeding ... upon any issue referable to arbitration." 9 U.S.C. § 3 (1970). Nothing in the federal arbitration statute implies that the statute is inapplicable where arbitration is not the exclusive remedy.

Under *Kauhi*, a party to a non-exclusive dispute resolution/arbitration clause may have a right to initiate a lawsuit, but if another party wishes to arbitrate, the Hawaii Supreme Court made it clear that arbitration should be ordered. Applying that rationale to the case at bar, Plaintiff may not have been precluded by the dispute resolution clause in the Agreement from filing suit. However, when Defendant requests arbitration of a dispute referable to arbitration, the strong policy favoring arbitration requires this court to stay proceedings.

■ Although no federal case has specifically followed *Kauhi*, it is consistent with the

strong federal policy favoring arbitration. As noted above, the fact that arbitration was not mandated by the dispute resolution clause does not mean that the parties did not agree to arbitration. Therefore, given the strong policy favoring arbitration, this Court holds that the case at bar is referable to arbitration and that the Federal Arbitration Act will be applied unless Defendant is found to have waived its rights to arbitration.

### 3. Waiver

The Ninth Circuit has held that waiver of a right to arbitration is not favored. *See Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir.1986); *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir.1984). "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher*, 791 F.2d at 694 (citing *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941). Any party "arguing waiver of arbitration bears a heavy burden of proof." *Id.*; *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir.1988).

■ The *Fisher* court set out a three-pronged test for analyzing whether a party has waived a contractual right to arbitration. The court stated:

> A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.

*Fisher*, 791 F.2d at 694. This three-pronged test has been applied by the Ninth Circuit in subsequent cases. *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990); *Van Ness*, 862 F.2d at 758. Thus, it is applicable in the case at bar to determine whether Defendant has waived its right to arbitration.

### a. Application

### 1. Knowledge

Neither party disputes the existence of knowledge on the part of Defendant concerning the applicability of the arbitration clause. Indeed, when Defendant filed its answer, the answer stated that Defendant was entitled to arbitration pursuant to the Hawaii and/or federal arbitration statutes. (Answer ¶ 7 at 3). Therefore, Defendant had knowledge of the arbitration right for at least a month before filing for a stay.

### 2. Inconsistent Actions

■ Plaintiff and Defendant participated in several months of negotiations prior to the initiation of the instant litigation. Plaintiff asserts that participation by Defendant in these negotiations was inconsistent with Defendant's asserted right to arbitration.

This argument should fail because if a court were to hold that attempts to negotiate act to waive a right to arbitration, it would chill the willingness of parties to attempt to settle disputes between themselves. If negotiation is held to constitute a waiver of arbitration, parties will immediately turn to a third party, foregoing a less expensive and more expedient route of reaching a mutually agreeable solution.

In addition to Plaintiff's negotiation/waiver argument, Plaintiff argues that Defendant waived its right to arbitration by filing an answer and counterclaim in the case at bar. Plaintiff alleges that these acts, as well as Defendant's delay for two months after the complaint was filed before moving for a stay pending arbitration, constitute a waiver.

In *Britton*, the court was asked to decide whether a *pro se* plaintiff who did not move the court to compel arbitration until one and a half years after a lawsuit was initiated had waived his arbitration rights. The court held that plaintiff's pre-trial actions, which consisted of resisting discovery and seeking a stay, were not inconsistent with the pursuit of arbitration. *Britton*, 916 F.2d at 1413. The court also held that the defendant's failure to raise arbitration as an affirmative defense in his answer did not constitute a waiver absent a showing of prejudice to the plaintiff. *Id.* (citing *Fisher*, 791 F.2d at 698).

In *Van Ness*, the plaintiffs filed a suit alleging various theories of recovery. The document which formed the basis of the rela-

tionship between the plaintiff and defendant contained an arbitration clause. However, the defendant did not raise the issue of arbitration in any of its pleadings, moved to dismiss the action without raising the issue of arbitration, and finally waited until near the trial date before moving for a stay pending arbitration. *Van Ness*, 862 F.2d at 759. The court applied the *Fisher* test and held that the defendant had waived its right to arbitration. *Id.* at 758–59. The court determined that the defendant's prolonged silence and active litigation until near the date of trial constituted a waiver of arbitration. *Id.* at 759.

Other courts have held that the mere act of filing pleadings in a lawsuit does not, without more, constitute a waiver of arbitration. In *Tenneco Resins, Inc. v. Davy Int'l AG*, 770 F.2d 416, 420–21 (5th Cir.1985), the court held that where a party asserted a right to arbitration in its answer, it did not waive arbitration by waiting until eight months after the complaint was filed and participating in discovery before seeking a stay. Similarly, in *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir.1987), the court stated that "[n]either delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." (citing *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329 (4th Cir.1971) which held that a delay of three months and the filing of a counterclaim did not constitute a waiver of arbitration). Likewise, in *McDonnell Douglas Finance v. Pennsylvania Power & Light Co.*, 858 F.2d 825 (2nd Cir.1988), the court refused to hold that responding to plaintiff's complaints, participating in discovery, delaying three months before seeking a stay, and threatening to file for summary judgment constituted a waiver of arbitration.

In the instant case, Defendant waited for merely two months after the complaint was filed before moving to stay proceedings pending arbitration. Defendant asserted a right to arbitration in its answer and did not participate in discovery.

The cases, taken together, suggest that the mere acts of filing an answer and taking some limited part in the litigation process do not constitute a waiver of arbitration rights. The courts look to whether the party seeking arbitration pleaded the right to arbitration in its pleadings. Therefore, on the basis of Defendant's actions, nothing suggests that Defendant has waived its right to arbitration. Defendant merely negotiated for a period of time, and when Plaintiff filed suit, Defendant responded by filing an answer as it was required to do. Defendant did not act inconsistently with its right to arbitration.

### 3. Prejudice

Plaintiff asserts that it has been prejudiced by the delays and expenses that have resulted from negotiations and litigation with Defendant. Plaintiff maintains that this prejudice, when combined with the acts of Defendant that are allegedly inconsistent with Defendant's asserted right of arbitration, constitutes a waiver of arbitration by Defendant. This Court finds that Plaintiff's argument is without merit for two reasons.

First, even if the negotiations between Defendant and Plaintiff were inconsistent with Defendant's right of arbitration, it is arguable that Plaintiff was not prejudiced by the expense of negotiation because those costs are expended whether Plaintiff sues or arbitrates its complaint. The case at bar is different from a case like *Van Ness* where defendant let litigation expenses pile up before trying to arbitrate. In that case, the plaintiff would have been prejudiced by arbitration because if arbitration had been allowed, the litigation costs would have been wasted. In this case, the negotiation costs would have been expended whether the dispute is litigated or arbitrated. Indeed, it is likely that the cost of arbitration will actually be less than if the case were litigated.

Second, Defendant's participation in the litigation has not arisen to such a level as to constitute a waiver of arbitration. The cases cited above have held that no waiver resulted when the moving parties filed pleadings, delayed for up to eight months, and even participated in discovery. In the case at bar, Defendant pleaded arbitration as an affirmative defense in its answer and waited only a

few weeks before moving this Court to stay proceedings. Additionally, Defendant succeeded in having discovery stayed until this motion was resolved. This is far different from *Van Ness*, where the moving party proceeded through the course of litigation, until trial was upon the parties, before seeking a stay. The prejudice to Plaintiff in the case at bar does not arise to that level. Given the absence of any discovery, the litigation expenses incurred to this point of the proceedings have been minimal.

In summary, Plaintiff has not succeeded in demonstrating that Defendant's actions arise to the level of a waiver of arbitration rights. Defendant's actions were not inconsistent with a right to arbitrate, and Plaintiff cannot succeed in proving that it has been sufficiently prejudiced by Defendant's actions to constitute a waiver.

### III. CONCLUSION

Therefore, because the issues involved in the case at bar are referable to arbitration and because Defendant has done nothing to waive its right to arbitration, this Court, pursuant to 9 U.S.C. § 3, grants Defendant's motion to stay proceedings pending arbitration.

IT IS SO ORDERED.