**H.L. LIBBY CORPORATION, Plaintiff,**

v.

**SKELLY AND LOY, INC., Defendant.**

**Civil Action No. 1:CV–95–1477.**

United States District Court,
M.D. Pennsylvania.

Dec. 21, 1995.

---

**6.** For the reasons stated above, defendant's motion for summary judgment is disposed of under

Rule 12(b).

Amy S. Cunningham, K. Bradley Mellor, Sable, Makoroff & Gursky, P.C., Pittsburgh, PA, for H.L. Libby Corporation.

Kathleen A. Dunst, McNees, Wallace & Nurick, Harrisburg, PA, James P. DeAngelo, Harrisburg, PA, David E. Lehman, McNees, Wallace & Nurick, Harrisburg, PA, for Skelly and Loy, Inc.

## MEMORANDUM

CALDWELL, District Judge.

We are considering Defendant's motion to compel mediation/arbitration and to dismiss or stay this action. Also pending is Plaintiff's motion for leave to file an amended complaint. We exercise jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

In 1993, Plaintiff, H.B. Libby Corporation ("Libby"), was the contractor for the construction of a shopping center known as Lake Raystown Shopping Center in Huntingdon County, Pennsylvania ("the Project"). Libby retained Skelly & Loy, Inc. ("Skelly") for engineering related work at the Project, and Skelly proceeded to perform a variety of services for Libby.

One of the services involved the preparation of a Highway Occupancy Permit ("HOP") application for the Project. The present action arises out of Skelly's performance in preparing this application. Libby instituted this action on March 21, 1995, in the United States District Court for the Western District of Pennsylvania. In its complaint, Libby advances claims for fraudu-

lent misrepresentation (Count I) and professional negligence (Count II), and seeks punitive damages (Count III). On April 25, 1995, Skelly filed an answer and counterclaim for breach of contract.

On that same date, Skelly filed a "Motion to Compel Mediation/Arbitration, to Dismiss the Action, to Stay the Action Pending Mediation/Arbitration, and to Transfer the Action to the United States District Court for the Middle District of Pennsylvania." In its motion, Skelly argues that Libby's claims emanate from a written contract between the parties that provides for arbitration of all disputes arising out of that contract.

The court granted Skelly's motion to transfer the case here on August 25, 1995, without deciding the motion to compel arbitration and dismiss or stay. We directed the parties to file supplemental briefs, and the motion is now ripe for disposition. Additionally, on October 16, 1995, Libby filed a motion for leave to file an amended complaint.

## II. *LAW AND ANALYSIS*

### A. *Motion to Compel Arbitration and Dismiss/Stay*

In its motion to compel, Skelly does not identify the authority upon which it relies in seeking to compel arbitration. There are, potentially, two statutes which could govern this action: the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or Pennsylvania Uniform Arbitration Act ("UAA"), 42 Pa. C.S.A. § 7301 *et seq.* Although not raised by the parties, we must resolve whether this action falls within the FAA or the UAA.

### 1. Applicability of Federal Arbitration Act

■ "Federal law preempts state law on issues of arbitrability." *Howard Fields & Associates v. Grand Wailea Co.*, 848 F.Supp. 890, 893 (D.Haw.1993) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). " 'Although state law is usually adopted in diversity cases, it is not followed in an action to enforce the arbitration provision of a contract in interstate commerce.' " *Id.* (citing *Huber, Hunt & Nichols v. Archi-*

*tectural Stone Co.*, 625 F.2d 22, 25 (5th Cir. 1980)); *see also Merrill Lynch, Pierce, Fenner & Smith v. Masland*, 878 F.Supp. 710, 712 (M.D.Pa.1995) (McClure, J.). Therefore, if the FAA is applicable in this action, it will control over the substantive state law, the Pennsylvania UAA.

■ The FAA applies to contracts "evidencing a transaction involving commerce...." 9 U.S.C. § 2. The term "commerce" is defined as "commerce among the several States...." 9 U.S.C. § 1. In the present case, if the contract at issue involves commerce, as that term is defined in the FAA, the FAA governs the dispute. *Howard Fields*, 848 F.Supp. at 893. "If, however, the transaction does not implicate interstate commerce, the *Erie* rules governing diversity jurisdiction will apply," and we apply the substantive law of Pennsylvania, the UAA. *Id.*

The Third Circuit has stated that "the federal Arbitration Act and the Pennsylvania Uniform Arbitration Act, and the case law that has developed under each, are functionally equivalent as regards the authority of a district court to review an agreement to arbitrate and to stay or compel arbitration.... Indeed, because the relevant federal and Pennsylvania case law is so clearly established and has evolved essentially in unison, we will refer to them interchangeably where helpful." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 510 n. 3 (3d Cir.1990). Thus, in most circumstances it is irrelevant which law is applicable.

■ However, there is some inconsistency in the two statutes with respect to the determination of whether an agreement to arbitrate exists. The FAA provides that

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the par-

ties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.... Where such an issue is raised, the party alleged to be in default may ... *demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure....*

9 U.S.C. § 4 (emphasis added). Thus, if the FAA is applicable, a court may only decide as a matter of law that the parties entered into or did not enter into an agreement to arbitrate if there is no genuine issue of fact concerning the formation of the agreement. *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir.1980). If there is a genuine issue of fact, the party allegedly in default is entitled to have a jury resolve the issue of whether the parties entered into an arbitration agreement. *Id.; see also Century Steel Erectors, Inc. v. Aetna Casualty & Surety Co.,* 757 F.Supp. 659 (W.D.Pa.1990).[1]

■ The corresponding section of the Pennsylvania UAA provides that

> On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. *If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party.*

42 Pa.C.S.A. § 7304(a) (emphasis added). Thus, under the UAA the court decides the issue of whether an agreement to arbitrate existed, without submission of that issue to a jury. *See Emlenton Area Mun. Authority v. Miles,* 378 Pa.Super. 303, 307, 548 A.2d 623, 625 (1988), *appeal denied,* 522 Pa. 613, 563 A.2d 498 (1989) ("it is for the court to determine whether an agreement to arbitrate exists, for the construction and interpretation of contracts is a question of law").

■ We must therefore determine whether the FAA applies here. We conclude that it does not. Although Libby is an Ohio corporation and Skelly is a Pennsylvania corporation, there is nothing to indicate that this contract involved commerce between two states. Rather, all correspondence arising out of the contract was within Pennsylvania, between Libby's Wexford, Pennsylvania office and Skelly's Monroeville and Harrisburg, Pennsylvania offices. Further, the services were performed in Pennsylvania by Skelly employees. Accordingly, we find that the FAA does not govern the outcome of this matter, and we look to the substantive law of Pennsylvania, the UAA. *See Merritt–Chapman & Scott Corp. v. Pennsylvania Turnpike Comm.,* 387 F.2d 768, 772 (3d Cir.1967).

### 2. Agreement to Arbitrate

Although the parties agree that a valid contract exists for services on the HOP application, they differ significantly in their understanding of its terms.

Skelly contends that on July 5, 1994, it sent a letter and two copies of a document entitled "Standard Terms and Conditions" to Libby. The document provides that

> 5. DISPUTES: Skelly and Loy and CLIENT agree to attempt to resolve any disputes by direct discussions; however, absent resolution by direct discussions, they agree to attempt to settle the dispute by mediation, under the Construction Industry Mediation Rules of the American Arbitration Association.

---

1. In *Par–Knit,* the court recognized that this is the standard used by district courts in considering motions for summary judgment, and noted that "[a]pplication of that standard ... is appropriate inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Par–Knit,* 636 F.2d at 54 n. 9.

Absent resolution thereunder, they agree to arbitrate in Harrisburg, Pennsylvania, under the Rules of the American Arbitration Association. [Exh. B to Def.'s Suppl.Br. in Support of Motion to Compel].

Skelly asserts that the first set of Standard Terms and Conditions related to a fixed amount of services for the HOP application, not to exceed $6,000.00. [Exh. A to Def.'s Suppl.Br. in Supp. of Motion to Compel]. It avers that these services were performed and paid for, and are therefore not at issue here.

The second set of Standard Terms and Conditions permits Libby to request additional engineering services from Skelly, to be billed at an hourly rate. [Exh. B to Def.'s Suppl.Br. in Support of Motion to Compel]. According to Skelly, Libby requested that Skelly perform additional services related to the HOP application from July, 1994 through January, 1995. It is these services, Skelly contends, that are the subject matter of the instant action.

A July 5, 1994 letter to Libby, referenced as a "Proposal for Construction Related Engineering Services; Lake Raystown Plaza", provides that

A hard copy of this letter will follow in regular mail along with two copies of our "Standard Terms and Conditions." We would further request that you then sign and return both copies of the "Standard Terms and Conditions." Upon receipt of the signed copies of the "Standard Terms and Conditions", we will sign the "Standard Terms and Conditions" and return one executed copy to you. If authorization to proceed is provided, the contract between Skelly and Loy and H.L. Libby Corporation for the completion of the scope of services presented in this letter in addition to any additional construction related engineering services you may request will consist of this letter and the executed copy of the "Standard Terms and Conditions."

[Exh. C to Def.'s Suppl.Br. in Support of Motion to Compel].

Libby maintains that Skelly faxed it the July 5, 1994 letter, accompanied by two copies of the Standard Terms and Conditions for hourly engineering services. It asserts that the proposed services were "surveying information relative to first floor elevation and flood plain elevation." [Pl.'s Br. in Opp'n to Motion to Compel at 4]. Libby admits, for purposes of this motion, that it signed the Standard Terms and Conditions, and that it gave authorization to Skelly to proceed with the work. However, it contends that the authorization was rescinded prior to any work being done because Libby realized that the elevation work had already been completed. In the alternative, Libby argues that if it did not rescind the authorization, then its signing of the Standard Terms and Conditions was simply a counteroffer that was not responded to by Skelly.

Thus, we are faced with conflicting arguments. Skelly maintains that the two forms of Standard Terms and Conditions were for: (1) a fixed amount of services related to the HOP application; and (2) a means for Libby to request additional hourly services in relation to the Project. Libby contends that the two forms were for hourly services related to services that had already been completed, and that it properly rescinded Skelly's authorization to perform those services. Additionally, Libby denies that the parties ever had a contract that included the agreement to arbitrate because Skelly never signed a copy of the Standard Terms and Conditions.

"Arbitration is a matter of contract and absent an agreement between the parties to arbitrate an issue, they cannot be compelled to arbitrate." *PBS Coal, Inc. v. Hardhat Min., Inc.*, 429 Pa.Super. 372, 377, 632 A.2d 903, 905 (1993) (citations omitted). When a party seeks to compel arbitration, "our inquiry is limited to determining: (1) whether a valid arbitration agreement was entered into, and, if so, (2) whether the dispute in question is within the scope of the arbitration provision." *Id.* at 376–77, 632 A.2d at 905 (citations omitted); *see also Aetna Casualty & Surety Co. v. Deitrich*, 775 F.Supp. 836, 837 (M.D.Pa.1991) (Rambo, J.).

Skelly contends that "[t]he existence of the two (2) contracts containing the identical arbitration clauses is not at issue." [Def.'s Supp.Br. in Supp. of Motion to Dismiss at

12]. However, whether the Standard Terms and Conditions was a part of the contract is in dispute. As noted, Libby denies that it ever agreed to be bound by Skelly's Standard Terms and Conditions, including the agreement to arbitrate.

Although the Standard Terms and Conditions bears the signature of Robert S. Libby, on behalf of Libby, his signature appears in the place reserved for a signature for Skelly. There is no signature for Skelly anywhere on the document. This contradicts Skelly's intention, expressed in its July 5, 1994 letter, that "[u]pon receipt [from Libby] of the signed 'Standard Terms and Conditions,' [Skelly] will sign the 'Standard Terms and Conditions' and return one executed copy to you." [Exh. C. to Def.'s Suppl.Br. in Support of Motion to Compel]. Finally, the document is not dated, other than the date of the facsimile transmissions between the parties. Libby has thus presented a colorable argument that the Standard Terms and Conditions do not constitute a part of the parties' contract that is at issue here.

Because the parties have not adequately addressed the issue of whether their contract included the agreement to arbitrate contained in the Standard Terms and Conditions, we will permit a limited period for discovery and the filing of briefs.[2] We will then attempt to resolve the dispute. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Melamed,* 425 So.2d 127, 129 (Fla. Dist.Ct.App.1982), *pet. for review denied,* 433 So.2d 519 (Fla.1983) (applying similar statute). In the event the matter cannot be decided on this basis, a hearing will be required. *Id.* (court must conduct expedited evidentiary hearing if it finds disputed issues in the making of an agreement to arbitrate).

B. *Motion for Leave to Amend*

Libby seeks to amend its complaint to add additional parties and an additional cause of action. Because Skelly will not be preju-

diced by an amendment, we will grant Libby's motion. Fed.R.Civ.P. 15(a).

---

**2.** Discovery shall be limited to the issue of whether the agreement to arbitrate was part of the parties' contract.