632 A.2d 903

**PBS COAL, INC.**

v.

**HARDHAT MINING, INC., a partner doing business as Lion Mining Company, and Lion Mining Co., Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 1, 1993.

Filed Oct. 20, 1993.

Gregg M. Rosen, Pittsburgh, for appellants.

Vincent J. Barbera, Somerset, for appellee.

Before ROWLEY, President Judge, and WIEAND and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Somerset County granting appellee PBS Coal, Inc.'s (PBS) petition for stay of arbitration. We affirm.

In 1989, PBS and appellant Lion Mining Company (Lion) entered into a coal mining agreement (Mining Agreement). Under the Mining Agreement, Lion was to conduct a deep

mining operation on the property owned or leased by PBS. In conjunction with the Mining Agreement, the parties entered into a Coal Supply Agreement whereby Lion agreed to mine and sell coal to PBS.

Pursuant to the agreements, Lion mined the coal until January, 1991, when it ceased all of its mining operations. By a letter dated April 3, 1992, PBS notified Lion that its abandonment amounted to a default under paragraph 17A(iii) of the Mining Agreement. Paragraph 17 provides in pertinent part:

A. It is agreed that the following shall constitute acts of *default* by a party hereunder.

i. The neglect or refusal of Contractor [Lion] to make payment of royalties, taxes or other sums required to be paid by Contractor hereunder ...

\* \* \* \* \* \*

iii. *The failure of Contractor [Lion] to commence Deep Mining Operations or to mine such tons of raw coal from the Project Area as are necessary for Contractor to comply with the requirements of the Coal Supply Agreement, or the breach by either party of the Coal Supply Agreement.*

\* \* \* \* \* \*

(emphasis added). The record reflects that PBS orally notified Lion's counsel that it did not consider the issue to be arbitrable. Thereafter, counsel for Lion notified PBS of its position to the contrary and appointed an arbitrator as directed by paragraph 18 of the Mining Agreement. Paragraph 18 of the Mining Agreement specifies that "any dispute arising between the parties hereto shall be subject to arbitration in accordance with the Arbitration Act of 1927 ... and in accordance with the rules then followed by the American Arbitration Association, *subject to the following:* "

*Arbitration shall in no wise toll or limit Owner's [PBS] rights and remedies with respect to defaults specified in Section 17A., subparagraphs (i), (iii), (iv), (v) or (vi). With respect to matters specified at subparagraph (ii), Owner's*

*rights and remedies shall only be deferred until the arbitrator's determination that a default exists thereunder.*

(emphasis added).

PBS filed a praecipe for writ of summons to enforce its rights and remedies under subparagraph 17A(iii), *supra*, and a petition for stay of arbitration pursuant to 42 Pa.C.S.A. § 7304(b)[1] claiming that the dispute between the parties was not arbitrable as defined by the provisions of the Mining Agreement. Lion filed a response and new matter and a petition to disqualify PBS's arbitrator. After arguments, President Judge Eugene E. Fike, II issued a memorandum and order granting PBS's petition for stay of arbitration and dismissing Lion's petition to disqualify the arbitrator as moot. This timely appeal followed. On appeal, Lion presents one issue for our review: Whether a coal mining agreement, which contains a broad arbitration clause that requires the parties to arbitrate all disputes other than those specifically exempted from arbitration, mandates arbitration of threshold issues uniquely suited for arbitration.[2]

It is well settled that when one party to an agreement seeks to prevent the other from proceeding to arbitration, our inquiry is limited to determining: (1) whether a valid arbitration agreement was entered into and, if so, (2) whether the dispute in question is within the scope of the arbitration

1. The relevant statute, 42 Pa.C.S.A. § 7304(b), provides:

   § **7304. Court proceedings to compel or stay arbitration**

   \*   \*   \*   \*   \*   \*

   (b) **Stay of arbitration.**—On application of a party to a court to stay an arbitration proceeding threatened or commenced *the court may stay an arbitration on a showing that there is no agreement to arbitrate.* When in substantial and bona fide dispute, such an issue shall be forthwith and summarily tried and determined and a stay of arbitration proceedings shall be ordered if the court finds for the moving party ...

   \*   \*   \*   \*   \*   \*

   (emphasis added).

2. Lion's Reply Brief more concisely articulated its issue on appeal: Whether technical threshold issues which are not exempt from arbitration must be arbitrated before or while other non-arbitrable questions of breach of contract are litigated in court.

provision. *Flightways Corp. v. Keystone Helicopter Co.*, 459 Pa. 660, 663, 331 A.2d 184, 185 (1975); *Canter's Pharmacy v. Elizabeth Assoc.*, 396 Pa.Super. 505, 508, 578 A.2d 1326, 1328 (1990); *accord Sanitation Sewer Auth. v. Dial Assoc.*, 367 Pa.Super. 207, 532 A.2d 862 (1987); *Hoffman v. Gekoski*, 250 Pa.Super. 49, 378 A.2d 447 (1977). Arbitration is a matter of contract and absent an agreement between the parties to arbitrate an issue, they cannot be compelled to arbitrate. *Shapiro v. Keystone Ins. Co.*, 384 Pa.Super. 397, 403, 558 A.2d 891, 894 (1989). Agreements to arbitrate are to be strictly construed and should not be extended by implication. *Emmaus Municipal Auth. v. Eltz*, 416 Pa. 123, 204 A.2d 926 (1964); *see also Dickler v. Shearson Lehman Hutton, Inc.*, 408 Pa.Super. 286, 596 A.2d 860 (1991). In addition, if the agreement or contract clearly includes or excludes particular issues or remedies from arbitration, a court may so hold without submitting these matters to arbitration. *Alco Standard Corp. v. Benalal*, 345 F.Supp. 14, 22 (E.D.Pa.1972).

In this case, Lion contends that the dispute between the parties is arbitrable because it is not specifically exempted from arbitration under the Mining Agreement. More specifically, Lion asserts: (1) that its contractual duty to mine and deliver coal to PBS under paragraph 17A(iii) of the agreement was never triggered; (2) that because of the nonexistence of minable and/or merchantable coal, the term of the agreement expired and, thus, Lion's duty under the agreement was discharged; (3) that since the agreement limited the scope of Lion's duty to mining the minable and merchantable coal which could be practically and profitably mined, the purpose of the contract was fulfilled; and (4) that its duty was discharged due to the nonexistence of the requisite coal which frustrated the purpose of the agreement. In summary, Lion contends that these threshold issues do not fall within the ambit of 17A(iii) of the Mining Agreement and, therefore, are subject to arbitration under the broad and general arbitration language of the agreement. We disagree.

Arbitrability of an issue is to be determined by the intention of the parties as ascertained in accordance with the

rules governing contracts generally. *Sley System Garages v. Transport Workers Union of America,* 406 Pa. 370, 373–74, 178 A.2d 560, 561–62 (1961). To ascertain the intent of the parties, a court must first look to the four corners of the document—the express language of the contract. *See Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507 (1986); *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791 (1924). Moreover, where specific or exact terms seem to conflict with broader or more general terms, the former is more likely to express the meaning of the parties with respect to the situation than the general language. Restatement (Second) of Contracts § 203(c) (1981); *see Spatz v. Nascone,* 283 Pa.Super. 517, 424 A.2d 929 (1981).

■ Here, Lion raises numerous contractual defenses or excuses for non-performance in order to rebut PBS's claim that Lion's stoppage resulted in default as defined by paragraph 17A(iii) of the agreement. Thus, Lion asserts that since these threshold or preliminary questions are not specifically enumerated in the Mining Agreement as exceptions to arbitration, they are arbitrable under the broad language of the arbitration provision. However, we find that PBS's claim that Lion failed to mine and deliver coal as required by the Coal Supply Agreement clearly falls within the exception to arbitration set forth at paragraph 17A(iii).

Ordinarily, parties agree to submit any and all disputes arising from the contract to arbitration. In this case, however, the specific terms of the arbitration clause predominate over the general intent of the parties to submit "any dispute" to arbitration. This is evidenced by the parties' choice to contractually define what acts of the parties shall constitute "default." In addition, the parties have decided to treat defaults under paragraph 17A(ii) differently than those under paragraphs 17A(i), (iii), (iv), (v) and (vi). Under the default defined in paragraph 17A(ii), PBS must forego its other possible rights and remedies against Lion until an arbitrator determines that a default *under this subparagraph,* in fact, exists. Given the sophistication of these parties, had they intended to require an arbitrator to determine that a default

exists under 17A(i), (iii), (iv), (v) or (vi) *prior* to PBS taking any other action, they would have provided for such in the agreement. We hold, therefore, that the trial court was correct in finding that PBS's claim against Lion for default was excepted from arbitration under the agreement. *Flightways, supra.*

Order affirmed.