542

## Zoological Society of Philadelphia v.
## INTECH Construction Inc.

*Robert Prentiss,* for plaintiff.
*Bruce L. Phillips,* for defendant.

SHEPPARD JR., *J.,* May 16, 2000—This opinion is submitted in support of this court's contemporaneous order granting the petition to stay arbitration filed by plaintiff, The Zoological Society of Philadelphia.

## FACTUAL AND PROCEDURAL HISTORY

The plaintiff/petitioner, The Zoological Society of Philadelphia, entered into a contract, dated January 9, 1998, with the defendant/respondent, INTECH Construction Inc., for the construction of what is generally referred to as "The primate project." Under the contract, the zoo is the owner and Intech is the general contractor.

The original contract sum was set at $15,490,000, "subject to additions and deductions as provided in the contract documents, including change orders." See respondent's brief at 5. The contract also provided a specific schedule for the completion of phases of the work. Certain additions and extensions of time were required as the project progressed, and procedures were implemented for effecting and recording these changes. See

*id.* at 5-6; petitioner's brief at 2-3. Various disputes, which are the subject of the present action, have arisen between the parties regarding these additions and extensions in time.[1]

The contract contained an arbitration clause, providing that: "[a]ny controversy or claim arising out of or related to the contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . ." Exhibit A at ¶4.9.1.

However, this arbitration clause is further defined and limited by a specifically inserted clause, entitled "Arbitration of claims—limitation of dollar amount," which states that: *"[t]he provision of article 4.9 of the general conditions (and all other provisions of the contract referencing the aforementioned article), requiring binding and final arbitration of controversies and claims in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, shall apply only to controversies and claims having a dollar value not exceeding the sum of $100,000. With regard to controversies and claims in excess of the aforementioned*

---

1. As detailed by respondent in its brief, Intech and the zoo established a "cost event" procedure for recording, dealing and tracking numerous and unanticipated project events and circumstances which were affecting or likely to affect the contract sum and time, and would be brought forth by change order or by claim. Respondent's brief at 5-6. Through the course of the ongoing project, Intech recorded not fewer than "571 separate and distinct CEs." *Id.* at 6. See exhibit 2. By February 3, 2000, the date on which Intech filed its demand for arbitration, Intech alleges that "there were not fewer than 200 [CEs] on which the zoo had refused to issue the requested change orders." *Id.* These CEs and the zoo's alleged refusal to comply constitute the subject matter of the present action.

*sum, the parties expressly reserve their respective rights to seek any and all appropriate redress available under applicable law, including, without limitation, institution of formal legal procedures.* " Exhibit A at insert A:4.9.1.1. (emphasis in original)

In addition, under paragraph 4.7.1 of the contract, a "claim" is defined as: "[a] demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of contract terms, payment of money, extension of time or other relief with respect to the terms of the contract . . . [and] also includes other disputes and matters in question between the owner and contractor arising out of or relating to the contract." Exhibit A at ¶4.7.1.

On February 3, 2000, Intech filed a demand for arbitration with the American Arbitration Association in Philadelphia, claiming that the case involves "not fewer than 350 individual claims" which "will require [the zoo] to make payment to [Intech] in an amount not exceeding $100,000 (per claim), the aggregate amount of the award . . . will be in excess of $2,500,000." See exhibit B— demand for arbitration at 2.[2] According to the demand filed by Intech, the claims allegedly include requests for the payment of money and extensions of time and arise out of alleged changes in the scope of the work required by the zoo; defects and deficiencies in the contract documents and design of the project; additional work required of Intech and alleged misconduct by the zoo which caused Intech to suffer delays in performing its work. See *id.* at

2. The references in this memorandum opinion to "exhibits" are to those exhibits embodied in the plaintiff's petition to stay.

1. By letter dated February 28, counsel for the zoo raised its objections to arbitration.

Nonetheless, on March 6, 2000, the AAA notified counsel that it would "proceed with its further administration." See exhibit D. Further, on March 9, 2000, after additional correspondence from both parties, the AAA notified both parties by telephone that it would proceed to administer the arbitration. See petition and answer at ¶15. On March 17, 2000, the zoo filed the instant petition to stay arbitration, pursuant to 42 Pa.C.S. §7304(b). On April 25, 2000, Intech filed its answer.

## DISCUSSION

### *Legal Standard and the Parties' Positions*

This court may stay (or compel) arbitration proceedings on a showing that there is no agreement to arbitrate. 42 Pa.C.S. §7304(b). Compare 9 U.S.C. §4. Pennsylvania law holds that when one contracting party seeks to prevent another from proceeding with arbitration, judicial inquiry is limited to determining: (1) whether a valid arbitration agreement exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision. *Midomo Co. Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 186 (Pa. Super. 1999). See also, *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 663, 331 A.2d 184, 185 (1975); *Smith v. Cumberland Group Ltd.,* 455 Pa. Super. 276, 283, 687, A.2d 1167, 1171, (1997); *PBS Coal Inc. v. Hardhat Mining Inc.,* 429 Pa. Super. 372, 376-77, 632 A.2d 903, 905 (1993). Here, both the zoo and Intech agree that a valid agreement to arbitrate exists within the con-

tract, but they disagree whether their dispute falls within the scope of the arbitration agreement. See petitioner's brief at 5-6; respondent's brief at 2.

In support of its petition to stay arbitration, the zoo contends that the dispute falls outside the scope of the arbitration provision since Intech's claims, and the zoo's claims in its own action, exceed the sum of $100,000. Petitioner's brief at 4. In opposition, Intech asserts that the dispute is arbitrable since each claim is "separate and distinct" and each individual claim does not exceed the sum of $100,000. Respondent's brief at 11. The issue presented is one of arbitrability: *i.e.,* whether the present dispute falls outside the scope of the arbitration clause in the contract. Specifically, this court must interpret the operative effect of the "Limitation of dollar amount" clause, set forth at insert A:4.9.1.1 of the contract.

### *The Dispute Is Not Covered by the Arbitration Clause*

First, Intech argues that this case is controlled by the Federal Arbitration Act and federal case law, and that the zoo and Intech "are parties to a written arbitration agreement contained in a contract evidencing transactions involving interstate commerce." See answer at ¶17. In his affidavit, Louis T. Parise P.E., Intech's senior project manager, attests that Intech, during the performance of the contract, contracted with numerous subcontractors and vendors, which were located both inside and outside of Pennsylvania, and that a substantial volume of goods, materials, tools and equipment flowed in the "stream of interstate commerce." Exhibit 2 at ¶4. The record does not reflect whether the parties understood,

at the time of contracting, that interstate commerce transactions would take place in order to perform the contract, and it remains unclear whether federal law applies. Nevertheless, assuming arguendo that the FAA applies to this dispute, this court's decision will be the same as if it applies Pennsylvania law.[3]

Pertinent sections of the FAA, codified at 9 U.S.C. §1 et seq., and the Pennsylvania Uniform Arbitration Act, codified at 42 Pa.C.S. §7301 et seq., are substantially similar. For example, 9 U.S.C. §2 provides that: "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Similarly, 42 Pa.C.S. §7303 includes the same wording as the above provision, except for the references to "maritime transaction" or "transaction involving commerce."

Further, both federal and state courts present similar analyses for reviewing arbitration agreements. This has prompted the court of appeals for the Third Circuit to recognize that: "the [f]ederal Arbitration Act and the Pennsylvania Uniform Arbitration Act, and the case law that has developed under each, are functionally equivalent as regards the authority of a district court to review an agreement to arbitrate and to stay or compel arbitration . . . . Indeed, because the relevant federal and Pennsylvania case law is so clearly established and has

---

3. Respondent arguably concedes this point. Respondent's brief at 4.

evolved essentially in unison, we will refer to them interchangeably where helpful. . . ." *Paine Webber Inc. v. Hartmann,* 921 F.2d 507, 510, n.3 (3d Cir. 1990).

The Pennsylvania Superior Court has stressed the deference afforded arbitration agreements by both federal and Pennsylvania courts, and concluded that "Pennsylvania's policy towards arbitration is entirely consistent with the United States Supreme Court's holding." *Dickler v. Shearson Lehman Hutton Inc.,* 408 Pa. Super. 286, 293, 596 A.2d 860, 863 (1991).

Public policy under both federal and Pennsylvania law advocates strict construction of arbitration agreements and dictates that any doubts or ambiguity as to arbitrability should be resolved in favor of arbitration. See *e.g., First Options of Chicago Inc. v. Kaplan,* 514 U.S. 938, 944-45 (1995); *Mastrobuono v. Shearson Lehman Hutton Inc.,* 514 U.S. 52, 62 (1995); *Volt Information Sciences Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 475-76 (1989); *Midomo Co. Inc v. Presbyterian Housing Development Co.,* 739 A.2d 180, 190-91 (Pa. Super 1999); *Smith v. Cumberland Group Ltd.,* 455 Pa. Super. 276, 283-84, 687 A.2d 1167, 1171 (1997); *PBS Coal Inc. v. Hardhat Mining Inc.,* 429 Pa. Super. 372, 376-77, 632 A.2d 903, 905 (1993).

However, as stated by the Supreme Court, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago,* 514 U.S. at 943. (citations omitted) See also, *Mastrobuono,* 514 U.S. at 57-58; *Allied-Bruce Terminix Companies Inc. v. Dobson,* 513 U.S. 265, 271 (1995); *Volt Information Systems,* 489 U.S. at 473; *Midomo,* 739 A.2d at 187; *Smith,* 687 A.2d

at 1171. Parties who do agree to arbitrate are not prevented "from excluding certain claims from the scope of their arbitration agreement." *Volt Information Systems,* 489 U.S. at 478.

In general, courts should apply ordinary state law principles that govern the formation of contracts when deciding whether the parties agreed to arbitrate certain issues. *First Options of Chicago,* 514 U.S. at 944. See also, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 626 (noting that "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"). The Pennsylvania Superior Court recently instructed that: "courts should apply the rules of contractual construction, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. . . . All parts of the contract should be interpreted together, with the goal of giving effect to each of its provisions." *Midomo,* 739 A.2d at 190-91. (citations omitted) See also, *Mastrobuono,* 514 U.S. at 63 (noting that "a document should be read to give effect to all its provisions and to render them consistent with each other"). (citations omitted)

In ascertaining the intent of the parties, a court must first look to the four corners of the document, containing the express language of the contract. *PBS Coal,* 429 Pa. Super. at 378, 632 A.2d at 905-906. "[W]here specific or exact terms [appear] to conflict with broader or more general terms, the former is more likely to express the meaning of the parties with respect to the situation than the general language." *Id.* at 378, 632 A.2d at 906

(citing Restatement (Second) of Contracts §203(c) (1981)).

Applying these principles here, this court finds that the parties unambiguously limited the scope of the arbitration provision to not include claims and/or disputes in excess of $100,000. The broad language contained in paragraph 4.9.1, stating that "[a]ny controversy or claim arising out of or related to the contract . . . shall be settled by arbitration," was expressly limited by insert A:4.9.1.1, which mandated arbitration only for those "controversies and claims having a dollar value not exceeding the sum of $100,000." Exhibit A at ¶¶4.9.1 and 4.9.1.1, respectively. (emphasis added) The parties explicitly excluded "controversies and claims in excess of the aforementioned sum" from the arbitration provision and reserved the right to seek legal redress for those claims. *Id.* at ¶4.9.1.1. This language must be read together with the definition of a "claim," incorporated at paragraph 4.7.1, which "also includes other disputes and matters in question between the owner and contractor arising out of or relating to the contract." Exhibit A at ¶4.7.1.

The reasonable interpretation of this language would hold that the present dispute falls outside of the arbitration provision, contrary to Intech's position that each claim is "separate and distinct" and "stands on its own set of facts." See respondent's brief at 6 and 11. In its demand for arbitration, Intech anticipated an aggregate amount of the award on its "not fewer than 350 individual claims" to be in excess of $2,500,000. Contrary to Intech's position, the "Limitation of dollar amount" clause is not ambiguous merely because it does not include the words "either singly or in the aggregate" after the words "controversies and claims." Since the defini-

tion of claim includes "other disputes . . . arising out of or relating to the contract," the additional language proposed by Intech would be unnecessary and superfluous. Moreover, each of Intech's claims against the zoo requests the payment of money and/or extension of time and arose out of events, however different, that occurred during the performance of the contact. In addition, by anticipating an aggregate award largely in excess of $100,000 against the zoo, Intech's position that this dispute falls within the arbitration provision is inconsistent.

This court acknowledges the deference that Pennsylvania and federal courts give to enforcing arbitration agreements. However, these same courts allow the parties to limit those issues which they will arbitrate, and that was what the zoo and Intech did here.

## CONCLUSION

For the above-stated reasons, this court grants the zoo's petition to stay arbitration of this matter, finding that this controversy will exceed the sum of $100,000.

And now, May 16, 2000, upon consideration of plaintiff's petition to stay arbitration and defendant's opposition to it, the respective memoranda, all other matters of record and in accordance with the memorandum opinion being filed contemporaneously with this order, it is ordered that the petition to stay is granted.