# Handel v. Schwartz

*C. George Milner,* for plaintiffs.
*Steven and Ilene Schwartz,* pro se.
*Elizabeth J. Feeney,* for defendants Legg Mason Wood Walker Inc. and Lane.
*Catherine C. Olanich,* for additional defendants Shaugnessy and Shaughnessy, Volzer & Gagner P.C.

MAZER MOSS, *J.,* July 26, 2001—

FACTS AND PROCEDURAL HISTORY

On May 8, 2001, we heard oral argument on Legg Mason Wood Walker Inc. and Linda Lane's (collectively Legg Mason) petition for permanent injunction. Legg Mason sought to permanently enjoin defendants Steven and Ilene Schwartz from compelling arbitration before either the National Association of Securities Dealers Inc. or the New York or American Stock Exchange for all claims involving the Schwartzes, Legg Mason and the Handels. Pursuant to the coordinate jurisdiction rule, we granted said injunction thereby restraining the Schwartzes

from "initiating or pursuing an arbitration or arbitration-related proceeding." See our order and injunction, May 16, 2001, p. 3. Said appeal follows.

## DISCUSSION

The coordinate jurisdiction rule recognizes "judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Commonwealth v. Starr,* 541 Pa. 564, 573, 664 A.2d 1326, 1331 (1995). In only a few extraordinary circumstances may a judge depart from the prior rulings of their colleagues sitting in coordinate jurisdiction. "[A]n intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed" are the few occasions outlined by the Supreme Court of Pennsylvania where such a departure is allowed. *Id.* at 575-76, 664 A.2d at 1332.

The Honorable Nitza I. Quiñones Alejandro issued numerous orders on whether or not arbitration should be compelled in said action. One such order, denying same, has been appealed to the Superior Court of Pennsylvania. On April 6, 2001, Judge Quiñones Alejandro filed an opinion based on her rulings. See exhibit A. Relying upon same and the coordinate jurisdiction rule, we granted Legg Mason's permanent injunction.

A permanent injunction is necessary as the party established "a clear right to relief and that irreparable harm will occur if such relief is not granted." *Commonwealth, State Ethics Commission v. Landauer,* 91 Pa. Commw.

70, 76, 496 A.2d 862, 865 (1985). Defendants Steven and Ilene Schwartz have sought to compel arbitration on numerous occasions and were denied. So as to enforce prior orders of our court, we find there was clear right to the relief requested. Same will avoid piecemeal litigation and prevent inconsistent outcomes. Further, we note compelling a party to proceed to arbitration without either an agreement or contractual obligation is per se irreparable harm. *Painewebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990).

We properly granted Legg Mason's permanent injunction. Further, based upon the coordinate jurisdiction rule, we adopt the Honorable Nitza I. Quiñones Alejandro's opinion and attach same. See exhibit A.

---

## EXHIBIT A

QUIÑONES ALEJANDRO, *J.,* April 6, 2001—

### INTRODUCTION

Steven Schwartz and Ilene Schwartz filed a pro se appeal and argue that their *motion to compel arbitration,* filed pursuant to Pennsylvania's Arbitration Act, 42 Pa.C.S. §7304, was erroneously denied. This motion judge disagrees.

### FACTUAL AND RELEVANT PROCEDURAL HISTORY

This motion judge carefully reviewed the pleadings and exhibits filed in this matter, as well as the briefs sub-

mitted in support of the respective pleadings. Briefly, the factual and procedural record defined by these pleadings is as follows:

Plaintiffs George Handel and Samuel Handel,[1] were brothers who jointly operated a business in New Jersey and held numerous joint ventures in an investment company.[2] Plaintiff Phyllis Tayler is an equity interest owner in the assets of the Handels' entities and funds, and a long-time employee of the Handels' businesses.[3]

At some point in time, Samuel Handel met defendant John Ludlam.[4] Defendant Ludlam, in turn, introduced Samuel Handel to defendant Steven Schwartz, and promoted defendant Schwartz as a brilliant financial planner and investment advisor. Allegedly, because of the influence of defendants Schwartz and Ludlam, Samuel Handel transferred $105,000 of his personal money to an account with defendant Legg Mason Wood Walker. Subsequently, defendant Schwartz persuaded the Handels to invest their company's and their personal monies in approximately eight additional accounts[5] at defendant

---

1. On July 18, 1999, Samuel Handel passed away as a result of cancer.

2. The complaint neither identifies the business operated by the Handel brothers nor the investment company where their various investment accounts were held.

3. There is no additional mention of Ms. Tayler in the complaint.

4. The complaint provides no factual averments as to John Ludlam other than this individual introduced Samuel Handel to defendant Steven Schwartz.

5. The following accounts (either preferred accounts or retirement accounts) were established at defendant Legg Mason in September 1998, all with the Handels' money, and with defendant Steven Schwartz identified as the investment advisor and financial planner: Handel partnership—405-11378; Samuel Handel—405-11379; Hantex—405-

Legg Mason. Defendant Schwartz was designated as the investment advisor. These preferred account agreements and the retirement agreements contained a provision entitled *consent to arbitrate*. The arbitration provision therein will be more fully discussed, *infra*.

When these accounts were created, the Handels and defendant Schwartz signed *trading authorization agreements*. Said agreements dated September 2, 1998, were also signed by Linda Lane,[6] as investment executive, and were approved by defendant Legg Mason on September 9, 1998. In these agreements, defendant Steven Schwartz was appointed agent and attorney-in-fact on behalf of the Handels. The agreements also provided that notice of all transactions, reports or other communications relating to the accounts were to be sent to the Handels' New Jersey business address, and to defendant Steven Schwartz. These agreements also stipulated that defendant Steven Schwartz was not authorized to withdraw money or securities from the accounts. Approximately $1,100,000 was deposited in the numerous accounts held by the Handels.

On November 25, 1998, Samuel Handel granted defendant Steven Schwartz a limited power of attorney, which authorized him to make investments in stocks,

11377; Handel and Company defined benefit plan—405-11376; Samuel Handel IRA—405-74133; Handel and Company profit sharing plan—405-11375; George Handel IRA—405-74132; and Sam and George Handel investment account—405-11380.

6. Linda Lane is an agent, servant or employee of defendant Legg Mason, and the aunt of defendant Steven Schwartz. She also served as the account supervisor of the Handel accounts over which defendant Schwartz was the investment advisor.

bonds, options, commodities and securites of any nature on behalf of Samuel Handel. The document indicated that the power of attorney was valid until revoked by Samuel Handel, who retained the ability to revoke it at any time. On November 30, 1998, George Handel signed a similar limited power of attorney.

Unbeknownst to the Handels and without their consent, the New Jersey address used to receive communication concerning the Handels' accounts and/or any transactions was changed to an unfamiliar address in Pennsylvania. Plaintiffs allege that defendant Schwartz also thereafter commenced a pattern of reckless trades in options and Internet stocks. These trades caused substantial financial losses to the Handels' accounts. Plaintiffs contend that defendant Schwartz also transferred monies between and into various accounts owned by the Handels and other individuals, including into accounts held by defendant Ilene Schwartz (his mother), and defendant Artz. Plaintiffs allege that as a result of these unauthorized transfers, defendant Schwartz embezzled an aggregated amount of $1,892,853 from the Handels' accounts. Defendants Schwartz deny the embezzlement and contend that they also deposited their own money into the Handels' accounts.

By the beginning of 1999, George Handel ended the agency agreements between the Handels, defendant Schwartz and defendant Legg Mason. He sought reimbursement of the monies embezzled but without success. Because of their losses, on February 9, 2000, plaintiffs commenced by a writ of summons, a civil action against defendants Legg Mason Wood Walker, Linda Lane, Steven Schwartz and Ilene Schwartz. On March 17, 2000,

plaintiffs filed a complaint against defendants alleging negligence, fraud, breach of fiduciary duty, breach of contract, conversion and embezzlement. On April 12, 2000, defendants Legg Mason and Linda Lane answered plaintiffs' complaint. On May 2, 2000, defendants Legg Mason and Linda Lane filed a joinder complaint against Brian Shaughnessy and Shaughnessy Volzer & Gagner.

On May 31, 2000, defendants Schwartz filed preliminary objections to plaintiffs' complaint. On June 7, 2000, plaintiffs filed a response to said preliminary objections, which were overruled by order dated July 13, 2000.[7]

On September 26, 2000, defendants Schwartz filed a petition to compel arbitration. Responses to said petition were filed by plaintiffs on October 12, 2000 (in opposition), by Shaughnessy defendants on October 18, 2000 (in support), and by defendants Legg Mason and

---

7. On July 6, 2000, plaintiffs filed a *praecipe to overrule preliminary objections* averring that defendants Schwartz failed to comply with Phila.R.C.P. *1028, which requires preliminary objections to be filed with civil administration within 30 days after said preliminary objections are filed with the office of the prothonotary.

On July 13, 2000, this motion judge overruled the preliminary objections filed by defendants Schwartz as these preliminary objections were not filed with civil administration. See Phila.R.C.P. *1028.

On August 17, 2000, defendants Schwartz filed a second set of preliminary objections with both the office of the prothonotary and civil administration. On September 6, 2000, this motion judge overruled said preliminary objections as these were improperly filed. See Pa.R.C.P. 1028.

On September 18, 2000, defendants Schwartz filed a motion for reconsideration and on October 13, 2000, this motion was denied.

On October 10, 2000, defendants Schwartz filed a notice of appeal with the Superior Court. On January 29, 2001, the Superior Court quashed said appeal.

Linda Lane on October 26, 2000 (in opposition). On October 31, 2000, these pleadings were assigned to the undersigned motion judge. By order dated December 1, 2000, this motion judge denied defendants Schwartz' petition to compel arbitration.

Dissatisfied with this order, on December 4, 2000, defendants Schwartz filed this appeal.

## ISSUE

A Rule 1925(b) letter was sent by this motion judge to defendants Schwartz, but the letter was returned stamped *address unknown.* Since defendants Schwartz did not receive the correspondence sent for reasons unknown, and because the issue on appeal is apparent, this motion judge opines that defendants Schwartz have not waived their appellate issues for failing to comply with 1925(b). From the record, it appears that the issue before the court is whether this motion judge erred in denying defendants Schwartz' petition to compel arbitration.

## LAW AND DISCUSSION

The Uniform Arbitration Act, 42 Pa.C.S. §7301 et seq., permits an appeal from a court order denying a motion to compel arbitration. Specifically, this Act provides:

"On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed to deter-

mine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied." 42 Pa.C.S. §7304(a). See also, *Santiago, infra; Messa, infra; Flightways Corp., infra.* Thus, technically, this motion judge's order dated December 1, 2000, which denied defendants Schwartz' petition to compel arbitration may be appealed.[8]

Arbitration is a matter of contract and, as such, in construing the language of an arbitration provision, courts must resort to the rules of contractual construction. *Hazleton Area School District v. Bosak,* 671 A.2d 277, 281 (Pa. Commw. 1996). The language of a contract should be construed with the intent of the parties as the paramount consideration. *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 190 A.2d 298 (1963). To determine the intent of parties to a contract, a court should look to the four corners of the document and its express language. *PBS Coal Inc. v. Hardhat Mining Inc.,* 429 Pa. Super. 372, 632 A.2d 903 (1993). The issue of whether a dispute is one that is covered by the terms of an arbitration agreement is for a court to determine. *Shadduck v. Christopher J. Kaclik Inc.,* 713 A.2d 635, 637 (Pa. Super. 1998); *Hazleton,* 671 A.2d at 283.

While this motion judge acknowledges that the law favors settlement of disputes by arbitration and seeks to promote swift and orderly disposition of claims, a court

---

8. As stated in defendant Legg Mason's brief, defendants Schwartz had argued before the court an oral motion to compel arbitration which was denied as late as September 7, 2000. Thus, defendants Schwartz' appeal is technically untimely.

must be careful not to extend an arbitration agreement by implication beyond the clear, express and unequivocal intent of the parties as manifested by the writing itself. *Hazleton, supra.* Because arbitration is a matter of contract, a particular issue cannot be arbitrated absent an agreement between the parties to arbitrate that issue. *Lincoln University of the Commonwealth v. Lincoln University Chapter,* 467 Pa. 112, 354 A.2d 576 (1976). Judicial inquiry on whether arbitration is appropriate is limited to the following questions: (1) whether an agreement to arbitrate was entered into; and (2) whether the involved dispute comes within the ambit of an arbitration provision. *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184 (1975). See also, *Midomo Co. Inc. v. Presbyterian Housing Development Co.* 739 A.29 180, 182 (Pa. Super 1999); *Santiago v. State Farm Insurance Co.,* 453 Pa. Super. 343, 346, 683 A.2d 1216, 1217 (1996); *Messa v. State Farm Insurance Co.,* 433 Pa. Super. 594, 599, 641 A.2d 1167, 1170 (1994).

Here, defendants Schwartz argue that because the numerous account agreements and, in particular, the *trading authorization agreements* signed by the Handels contained a consent to arbitrate clause, the instant complaint must be transferred to arbitration. They further argue that although defendant Steven Schwartz is not a signatory of said agreements, he is a party to the agreement since he was appointed an agent by the Handels, and authorized to act on their behalf regarding their accounts with defendant Legg Mason. Defendants Schwartz contend that since the numerous account agreements provide that *This agreement will not be affected by my death, disability, incompetence, or incapacity and is binding on me,*

*my estate and those with authority to act on my behalf,* he has standing to compel arbitration. Of interest, defendants Schwartz do not acknowledge that the agreements also contain a provision that the agreements may be terminated and the authority granted to the agent revoked, at any time and for any reason. The Handels revoked defendant Schwartz' authority in early 1999.

Pursuant to the relevant case law, this motion judge first looked to decide whether defendants Schwartz had standing to enforce the consent to arbitrate provisions contained in the numerous account agreements and the eight *trading authorization agreements.* Without reproducing the documents in their entirety, the relevant portions of these agreements, similar in nature, read as follows:

*"Arbitration is final and binding on the parties.*

*"By agreeing to arbitrate, parties are waiving their right to seek remedies in court, including the right to a jury trial. . . .*

*"I agree that all controversies that may arise between us concerning any transaction or the construction, performance, or breach of this agreement, or any other agreement between us, pertaining to securities and other property, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted only before the New York Stock Exchange Inc., the National Association of Securities Dealers Inc. or the Municipal Securities Rulemaking Board in accordance with the rules of the selected organization then in effect. The award of the arbitrators, or the majority of them, shall*

*be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction."*

As stated, defendant Steven Schwartz was noted in the *trading authorization agreements* as the Handels' agent and attorney-in-fact authorized to act on their behalf on their accounts with defendant Legg Mason. The introductory paragraph of the agreement provides that said agreement is binding on those with authority to act on behalf of the Handels.[9] Thus, based on the plain reading of the cited arbitration provision it appears that defendant Steven Schwartz *only,* and not defendant Ilene Schwartz had, at a particular time, authority to enforce the arbitration provision and compel arbitration. However, this authorization was subsequently revoked by the Handels in early 1999. At the time plaintiff Handel filed the complaint in 2000, the agency agreement between the Handels, defendant Steven Schwartz and defendant Legg Mason was *successfully terminated.* Thus, in this motion judge's opinion the above-cited arbitration provisions ceased to be in effect as of 1999, and have no relevance in the instant action.

Furthermore, this motion judge opines that defendant Steven Schwartz waived whatever right he had to enforce arbitration. As stated, while our courts favor the settlement of disputes by arbitration, the right to enforce an arbitration clause can be waived. *Teodori v. Penn Hills School District Authority,* 413 Pa. 127, 196 A.2d 306 (1964). A waiver of a right to proceed to arbitration may

9. Defendant Ilene Schwartz is neither a signatory to the *trading authorization agreement,* an appointed agent of the Handels, nor a party to said agreement.

be expressly stated, or it may be inferred from a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opposition for reasonable inference to the contrary. *Goral v. Fox Ridge Inc.,* 453 Pa. Super. 316, 683 A.2d 931 (1996). Such a waiver should not be lightly inferred, and unless one's conduct has gained him undue advantage or resulted in prejudice to another he should not be held to have relinquished the right. *Id.* The key to determining if the right to arbitrate has been waived is whether the party, by virtue of its conduct, has accepted the judicial process. *St. Clair Area School District Board of Education v. E.I. Associates,* 733 A.2d 677 (Pa. Commw. 1999). Acceptance of the judicial process is demonstrated when the party (1) fails to raise the issue of arbitration promptly; (2) engages in discovery; (3) files pretrial motions which do not raise the issue of arbitration; (4) waits for adverse rulings on pretrial motions before asserting arbitration; or (5) the party waits until the case is ready for trial before asserting arbitration. *Goral, supra; Moscatiello Construction Co. v. Pittsburgh Water and Sewer Authority,* 167 Pa. Commw. 508, 648 A.2d 1249 (1994), *petition for allowance of appeal denied,* 540 Pa. 608, 655 A.2d 995 (1995).

Here, defendant Schwartz is accused of embezzling over a million dollars from the Handels' accounts. This behavior forced the Handels to revoke the agency relationship with defendant Steven Schwartz in early 1999, and to file a civil action against him and the other defendants in early 2000. In this motion judge's opinion, this alleged egregious conduct constitutes a waiver of any right to compel arbitration that defendant Steven

Schwartz had. Additionally, discovery and numerous adverse rulings against defendants Schwartz,[10] including the July 13, 2000 and August 17, 2000 pretrial motions, preceded the September 26, 2000 petition to compel arbitration thereby subjecting defendant Steven Schwartz to the judicial process. Consequently, defendant Steven Schwartz does not have standing to enforce the arbitration provisions of the *trading authorization agreements.*

## CONCLUSION

Based on the reasons stated, this motion judge opines that no errors were committed in denying defendants Schwartz' motion to compel arbitration. Consequently, this motion judge respectfully recommends that defendants' appeal be dismissed, and that the order, which denied defendants' motion to compel arbitration, be affirmed.

---

10. See n.7.