J-A28021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RITTENHOUSE 1603, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EUGENE BARBERA, | |
| Appellant | No. 2068 EDA 2015 |

Appeal from the Order Entered June 19, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 00080 December Term, 2014

BEFORE:  PANELLA, SHOGAN, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 16, 2016**

Eugene Barbera, Appellant, appeals from the order denying his motion to transfer the underlying litigation to arbitration.  We affirm.

Appellant and Lewis Katz created Rittenhouse 1603, LLC ("Rittenhouse") in order to purchase a condominium at 202-10 Rittenhouse Square, Unit 1603, in Philadelphia.  Lewis Katz contributed $235,000 for four, Class A voting units and the role of manager; Appellant contributed $1 for one Class B non-voting unit.  Pursuant to section 10.02 of Rittenhouse's Operating Agreement, any dispute among the parties or between a member and the manager, whether arising under the Operating Agreement or

_____

[*]  Retired Senior Judge assigned to the Superior Court.

otherwise, had to be settled by Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Operating Agreement, 3/13/13, at § 10.02.

On December 12, 2013, Appellant assigned his Class B non-voting unit in Rittenhouse to Lewis Katz. That same day, Rittenhouse and Appellant entered into an Occupancy Agreement, whereby Rittenhouse granted Appellant the right to live in Unit 1603 from December 23, 2013, until thirty days after written notice of termination. The occupancy was "at will" and did not create a landlord-tenant relationship.

Lewis Katz died on May 31, 2014. His son, Drew Katz, became manager of Rittenhouse. In a letter dated August 19, 2014, Drew Katz informed Appellant that Rittenhouse was terminating the Occupancy Agreement and, pursuant to its provisions, directed Appellant to vacate Unit 1603 within thirty days. Appellant failed to vacate Unit 1603 and remains in possession.

Rittenhouse filed an action against Appellant for possession of Unit 1603 in Philadelphia Municipal Court and prevailed. Judgment, 11/21/14. Appellant filed an appeal to the Philadelphia Court of Common Pleas and a *praecipe* for Rittenhouse to file a complaint. Rittenhouse filed a five-count complaint on December 15, 2014, seeking damages and possession of Unit 1603 based on Appellant's breach of the Occupancy Agreement, ejectment, trespass, and unjust enrichment. Rittenhouse also filed a motion for preliminary injunctive relief on December 15, 2014. Appellant responded on

December 23, 2014, with a brief in opposition. Following a hearing on January 15, 2015, the trial court denied injunctive relief and granted Appellant a *supersedeas* that allowed him to remain in Unit 1603 while paying money into escrow and providing insurance documents. Order, 2/3/15.

Beginning on January 30, 2015, a volley of preliminary objections ensued. Eventually, the trial court sustained Appellant's preliminary objection to Rittenhouse's trespass count. Order, 4/20/15. As for the remaining counts, Appellant argued that the Occupancy Agreement attached as an exhibit to Rittenhouse's complaint did not contain valid signatures. The trial court overruled the objection, noting that Appellant's argument could be raised as new matter. ***Id.***

Appellant filed an answer and new matter on May 7, 2015, raising standard defenses. Rittenhouse filed a reply to the new matter on May 22, 2015, and a motion to quash Appellant's notice to attend the upcoming trial. Less than one hour before trial on May 28, 2015, Appellant filed a response to Rittenhouse's motion to quash and a motion to transfer the matter, raising the arbitration provision in section 10.02 of the Operating Agreement. After hearing from one witness presented by Rittenhouse, the trial court continued the trial to address the arbitration issue, allowing Rittenhouse to file a response to the motion to transfer, which it did on June 16, 2015. The trial court denied the motion to transfer on June 19, 2015,

finding the issue waived and, alternatively, the arbitration provision inapplicable.

Appellant filed the instant appeal on July 7, 2015.[1] He raises one question for our review: "Did the trial court err by failing to transfer the matter to JAMS arbitration pursuant to the Parties' agreement?" Appellant's Brief at 4.

Whether a dispute falls within the purview of a contractual arbitration provision is a question of law. *McNulty v. H&R Block, Inc.*, 843 A.2e 1267, 1272 (Pa. Super. 2004). In answering this question, courts engage in a two-step inquiry: (1) does a valid agreement to arbitrate exist; (2) is the dispute within the scope of the agreement. *Id.* "[A]bsent an agreement between the parties to arbitrate an issue, they cannot be compelled to arbitration." *PBS Coal, Inc. v. Hardhat Min., Inc.*, 632 A.2d 903, 905 (Pa. Super. 1993).

Appellant argues that the Operating Agreement and its arbitration provision control the outcome of this case. Appellant's Brief at 14–21. Notably, Appellant makes no argument regarding the Occupancy Agreement, which does not have an arbitration provision.

In contrast, the trial court concluded that the Occupancy Agreement controls the outcome of this dispute:

---

[1] Appellant and the trial court have complied with Pa.R.A.P. 1925.

- 4 -

No relief sought by [Rittenhouse] is based on a breach of the Operating Agreement. Rather, the five count complaint seeks damages and possession of Unit 1603 based on the alleged breach of the Occupancy Agreement, as well as the common law legal theories of ejectment, trespass and unjust enrichment.

* * *

Section 10.02 of the Operating Agreement is inapplicable. [Appellant] was a Class B Nonvoting Member of [Rittenhouse] from March 13, 2013, the effective date of the Operating Agreement, until December 12, 2013, when [Appellant] absolutely and irrevocably assigned, transferred and set over his membership interest in [Rittenhouse] to Lewis Katz. [Appellant] argues that the absolute assignment of his member interest to [Rittenhouse] was not effective because Lewis Katz "never issued prior consent to the Purported Assignment." See Paragraph 4 of [Appellant's] motion to transfer. In support of his argument, [Appellant] relies on Section 7.02 of the Operating Agreement which provides that "with the prior written consent of the manager, any Class B Nonvoting Member may, at any time or times, transfer Class B Nonvoting Units (a) to any other member, (b) to any Affiliate of a member, or (c) to the Company."

The court appreciates the need for Lewis Katz to provide written consent if [Appellant] wanted to transfer his Class B Nonvoting Unit to someone other than Lewis Katz. There is no logical or legal basis to hold that the transfer from [Appellant] to Lewis Katz was not effective because Lewis Katz did not issue his prior written consent to the transfer. Additionally, section 7.08 of the Operating Agreement provides that Lewis Katz, as "the Initial Class A Member shall have the right, but not the obligation, to repurchase all of the Class B Nonvoting Units from any Class B Nonvoting Member at anytime for one Dollar." Section 7.08 does not require any prior written consent. The December 12, 2013 Absolute Assignment of Membership Interest refers to Section 7.08 and Lewis Katz obtained [Appellant's] Class B Nonvoting Unit from [Appellant] for one dollar.

Therefore, after December 12, 2013, [Appellant] no longer was a member of [Rittenhouse]. As of December 12, 2013, the only member of [Rittenhouse] was Lewis Katz. Section 10.02 of the Operating Agreement requires negotiation and arbitration

"(1) in the event of any dispute among the parties hereto arising under this Agreement or (2) in the event of any dispute between a member and the Manager whether arising under this Agreement or otherwise." Since [Appellant] ceased being a party or member as of December 12, 2013, Section 10.02 is inapplicable.

The Occupancy Agreement is the central and controlling agreement in this case. Unlike the Operating Agreement, the Occupancy Agreement does not contain any negotiation and arbitration clause. Even if [Appellant] remained a member of [Rittenhouse] or a party to the Operating Agreement after Lewis Katz and he entered into the December 12, 2013 Absolute Assignment of Membership Interest, the current dispute is not one "arising under this Operating Agreement." As noted above, it is a dispute arising under the Occupancy Agreement.

Section 10.02 of the Operating Agreement also provides for negotiation and arbitration in the event of a dispute between a member and the manager "whether arising under this Operating Agreement or otherwise." While the inclusion of "or otherwise" makes the scope of the covered dispute broader, it does not include the present dispute. Even if the court assumes that [Appellant] continues to be a member, the present dispute is not with the manager. Rather, the dispute is with [Rittenhouse] over whether or not [Appellant] has any lawful right to occupy Unit 1603 under the terms of the Occupancy Agreement. [Rittenhouse] and not its manager is the owner of Unit 1603.

Trial Court Opinion, 3/9/16, at 3, 5–6.

Upon review, we agree with the trial court that Appellant's refusal to vacate Unit 1603 falls squarely under the Occupancy Agreement. In compliance therewith, Rittenhouse sent Appellant a thirty-day notice of termination. Appellant refused to vacate Unit 1603, which constitutes a breach of the Occupancy Agreement. Contrary to Appellant's arguments, his status under the Operating Agreement does not control the outcome of this

matter. Therefore, we discern no error in the trial court's refusal to transfer the underlying litigation to JAMS.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016