*708 TEXTO COMPLETO DE LA SENTENCIA
Acude ante este Foro, ICN Dutch Holdings, B.V. Corp y Frankie Santana (parte querellada-apelante) mediante un recurso de certiorari, presentado en 18 de julio de 2002, con el interés de que revoquemos una Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Humacao, emitida y notificada en 26 de junio de 2002 y notificada a las partes en 8 de julio del mismo año.
Mediante el referido dictamen, el foro judicial de primera instancia declaró CON LUGAR la querella laboral presentada por Pedro Rivera Pagán (Rivera Pagán), al amparo del procedimiento sumario establecido en la Ley Núm.2, 32 L.P.R.A. sec.3118 et.seq., según enmendada.
Examinado el recurso en sus méritos y por los fundamentos que se exponen a continuación, se revoca la sentencia apelada.
I. Trasfondo fáctico y procesal
Rivera Pagán presentó una querella contra ICN Dutch Holdings B.V. Corp, Frankie Santana como presidente de ICN Dutch Holdings B.V. Corp, Corporación XYZ y ABC Insurance Corp "parte querellada-apelante, en 16 de mayo de 2001 ante el Tribunal de Primera Instancia sobre "Despido Injustificado bajo Ley 80, Daños y Perjuicios, Discrimen por Edad y Ley 100", bajo el procedimiento especial de la Ley Núm.2, 32 L.P.R.A. sec.3118 et. seq., según enmendada. (Apelación, Anejo 1, pág.8) Ese mismo día fue emplazada la parte querellada-apelante. (Apelación, Anejo3, págs.14-17)
En dicha querella, se alegó que el Sr. Rivera Pagán había sido despedido deforma injustificada al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. see.185 et. seq., y de forma discriminatoria, violándose las disposiciones de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L. P.R.A. se. 146 y la Ley Federal Contra el Discrimen en el Empleo por Razón de Edad, 29 U.S.C.A.621, y solicitó: (1) una compensación ascendente a cuarenta y dos mil ochocientos doce dólares ($42,812.00) por violación a la Ley Núm.80, supra; (2) compensación por la cantidad de cien mil dólares ($100,000.00) por discrimen por razón de edad, daños y perjuicios, lesión a su dignidad, honra, reputación, sufrimientos y angustias mentales sufridos; (3) ocho mil ochocientos trece dólares ($8,813.00 por ingresos dejados de percibir. (Apelación, Anejo 2, págs.11-12)
En 29 de mayo de 2001, la parte querellada-apelante presentó una Moción Solicitando Extensión de Término *709 para Contestar o de Otra Manera Alegar, en la que se solicitó un plazo de cinco días laborables para presentar alegación responsiva. En el referido escrito, se alegó como defensa afirmativa que el empleo del Sr. Rivera Pagán estaba sujeto a un Acuerdo de Mediación y Arbitraje mandatorio sobre toda disputa, por lo que era "...necesario revisar la procedencia de dicho proceso a la controversia." (Apelación, Anejo 4, págs.18-20)
Mediante Orden de 5 de junio de 2001, el foro de instancia concedió la solicitud de término adicional para alegar, notificada la misma en 12 de junio de 2001. (Apelación, Anejo 5, pág.21)
En 15 de junio de 2001, la parte querellada-apelante trasladó el caso para el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, a tenor con la Sección 1446 del Título 28 del Código de los Estados Unidos, 28 U.S.C. see. 1446. (Apelación, Anejo 6, págs. 22-67) El traslado fue notificado al Tribunal de Primera Instancia el mismo día mediante escrito titulado Notificación de Traslado al Tribunal de Distrito Federal. (Apelación, Anejo 7, págs. 68-69).
Además, el mismo día de trasladado el caso, 15 de junio de 2001, la parte querellada-apelante presentó al Tribunal de Distrito Federal un escrito titulado "Motion Requesting Extension of Time to Answer Complaint", en la que solicitó una extensión de término para presentar una alegación responsiva. En el referido escrito, se indica nuevamente que el empleo del Sr. Rivera Pagán estaba sujeto a una cláusula mandatoria de mediación y arbitraje que le impedía una reclamación de despido injustificado y discrimen en el empleo ante el foro judicial, no sin antes haberse efectuado el proceso de arbitraje contenido en el acuerdo de mediación y arbitraje. (Apelación, Anejo 8, págs.70-72)
En 25 de junio de 2001, el Tribunal de Distrito Federal dictó Orden en la que se extendió el término para contestar la demanda o de otra forma alegar, hasta el día 6 de julio de 2001. (Apelación, Anejo 9, pág.73)
En 6 de julio de 2001, la parte querellada-apelante presentó ante el Tribunal de Distrito Federal, un escrito titulado "Motion to Dismiss Pending Compliance with Mediation and Arbitration Agreement and Memorando of Law in Support Thereof, en el que se solicitó la desestimación del caso, al amparo de las disposiciones del estatuto federal, "Federal Arbitration Act", 9 U.S.C. secs. 1 y 2, y su jurisprudencia interpretativa. En apoyo de la solicitud se alegó que como requisito a la obtención de su empleo, el Sr. Rivera Pagán suscribió un acuerdo escrito de mediación y arbitraje en 5 de mayo de 1999 (Véase, Apelación, Anejo 20, págs. 174-177). En dicho acuerdo, las partes acordaron someter a mediación y arbitraje toda controversia que surgiese y que fuera relacionada al empleo del Rivera Pagán con el patrono querellado, en las que se incluyen reclamaciones de despido injustificado y discrimen en el empleo. (Apelación, Anejo 10, págs. 74-91).
En 17 de julio de 2001, Rivera Pagán presentó ante el Tribunal de Distrito Federal un escrito titulado "Motion to Remand", en el que solicitó que el caso se devolviera al foro de instancia. En el referido escrito, Rivera indicó que no fue su intención reclamar un remedio bajo el estatuto federal que prohíbe el discrimen por razón de edad, mejor conocido como "Age Discrimination in Employment Act", 29 U.S.C.A.621. A esos efectos, la parte querellada-apelante presentó su oposición al escrito presentado por Rivera Pagán en 6 de noviembre de 2001. (Apelación, Anejo 12, págs. 97-101)
Aún cuando el caso se había trasladado al Tribunal Federal, el Tribunal de Primera Instancia señaló una conferencia inicial en el caso para el día 21 de agosto de 2001. A dicha conferencia, no compareció la parte querellada-apelante, toda vez que el caso había sido trasladado. Ante la incomparecencia de ésta, el Tribunal de Primera Instancia impuso contra su representación legal, una sanción de quinientos dólares ($500.00) y le exigió que mostrara causa por la incomparecencia. Además, señaló para el 9 de noviembre de 200.1 una segunda conferencia inicial. (Apelación, Anejo 13 (a), págs. 102-105)
En 9 de octubre de 2001, la parte querellada-apelante presentó escrito mostrando causa por su *710 incomparecencia, en la que indicó que una vez trasladado el caso al Tribunal Federal, el foro de instancia carecía de jurisdicción y solicitó la cancelación de la conferencia señalada para el 9 de noviembre de 2001. (Apelación, Anejo 14, págs. 107-117)
Atendido el escrito, el foro de instancia dictó Orden en 22 de octubre de 2001 y notificada el día 30 de octubre, en la que concedió a Rivera Pagán, el término de diez (10) días para replicar. Ante dicha Orden, la parte querellada-apelante presentó ante el Tribunal Federal una moción en la que solicita el auxilio del dicho tribunal para paralizar los procedimientos en el foro de instancia. (Apelación, Anejo 15, págs. 119-123)
En 7 de noviembre de 2001, el Tribunal de Distrito Federal ordenó la paralización de los procedimientos ante el Tribunal de Primera Instancia. (Apelación, Anejo 16, págs. 145-146) Fue en 16 de noviembre de 2001 que el foro de instancia dictó Sentencia decretando el cierre del caso. No obstante, comete error el foro apelado al exponer que la razón para el cierre del caso era que se había presentado una solicitud de quiebras ante el Tribunal de Distrito de los Estados Unidos.(Apelación, Anejo 17, págs. 147-148)
En 31 de marzo de 2002, el Tribunal de Distrito Federal emitió Opinión y Orden, notificada en 4 de abril de 2002, en la que ordenó la devolución de la querella al Tribunal de Primera Instancia, por entender que Rivera Pagán no había presentado una reclamación firme bajo el "Age Discrimination in Employment Act", 29 U.S.C. A.621 y que, de haberla presentado, éste había renunciado a la misma. (Apelación, Anejo 18, págs. 149-156) 
En 10 de abril de 2002, la parte querellada-apelante presentó una moción informativa ante el foro de instancia notificándole la orden y opinión emitida por el Tribunal Federal. (Apelación, Anejo 19, págs.157-166) Junto con la moción informativa, presentó también una "Solicitud de Desestimación y /o Sentencia Sumaria y/o Paralización Mientras se Cumple con el Acuerdo Contractual de Mediación y Arbitraje", ante la existencia de un Acuerdo de Mediación y Arbitraje, que dispone para resolver disputas relacionadas con empleo de Rivera Pagán con ICN Dutch Holdings mediante un proceso de mediación y arbitraje. A dicha solicitud se anejaron los siguientes documentos: (1) acuerdo de mediación y arbitraje suscrito por las partes en el caso de autos; (2) copia certificada de autorización para hacer negocios en Puerto Rico de ICN Dutch Holdings expedidos por el Departamento de Estado de Puerto Rico, y; (3)carta de fecha de 2 de julio de 2001 enviada por ICN Dutch Holdings a Rivera Pagán requiriéndole presentar sus reclamaciones al proceso de arbitraje contenido en el acuerdo, entre otros. (Apelación, Anejo 20, págs.167-217)
Por su parte, Rivera Pagán presentó Moción Solicitando se Dicte Sentencia, en 11 de abril de 2002, solicitando se dictara sentencia debido a que, alegadamente, la parte querellada-apelante no había contestado la querella o presentado una alegación responsiva oportunamente. (Apelación, Anejo 21, págs.218-221)
Días mas tarde, en 23 de abril de 2002, Rivera Pagán presentó Moción en Oposición a Solicitud de Desestimación y/o Sentencia Sumaria y/o Paralización Mientras se Cumple con Acuerdo Contractual de Mediación y Arbitraje.
El Tribunal de Primera Instancia dictó sentencia 26 de junio de 2002, notificada en 8 de julio de 2002, en la que señaló para el día 13 de agosto de 2002 la vista sobre la reclamación de daños y expresó:

“Es un hecho establecido que al momento de la parte querellada informar el traslado del caso al Tribunal de Distrito Federal no había radicado su contestación a la querella. ...Al momento de dictarse esta sentencia la querella no ha sido contestada.

Por los fundamentos antes expuestos se declara ha lugar la querella presentada y en su condena a la querellada al pago de la suma de $42,812 como compensación de su reclamación bajo la Ley Núm. 80 de 30 de mayo de 1976; la suma de $8,813 por pérdida económica y beneficios dejados de percibir más las costas y gastos 
*711
del procesos [sic.] y una suma equivalente al veinticinco por ciento (25%) del total del remedio concedido por concepto de honorarios de abogado. ”

Inconforme con el referido dictamen, la parte querellada-apelante presentó un recurso de certiorari, correctamente apelación, en 18 de julio de 2002, en el que señala los siguientes errores, alegadamente cometidos por el Tribunal de Primera Instancia, Sala Superior de Humacao:

“PRIMER ERROR: Erró el Tribunal de Instancia al concluir que la parte querellada no había presentado oportunamente contestación a la querella o alegación responsiva en tomo a la misma y, en consecuencia, dictar sentencia en rebeldía en su contra de conformidad con la Ley Núm.2.

SEGUNDO ERROR: Erró el Tribunal de Instancia al denegar implícitamente la solicitud de desestimación y/ o sentencia sumaria presentada por la parte querellada en contravención de las disposiciones de la Federal Arbitration Act aplicables al acuerdo de mediación y arbitraje suscrito entre las partes y la vigorosa política pública que favorece el arbitraje como método alterno para la solución de disputas en Puerto Rico. ” (Apelación, pág.16)
En 2 de agosto de 2002, Rivera Pagán presenta Memorando en Oposición a Certiorari (correctamente apelación), solicitando que declaremos NO HA LUGAR la apelación presentada.
Contando con el beneficio de la comparecencia de las partes, estamos en posición de resolver.
II. Discusión de errores señalados y derecho aplicable.
Se señala como primer error, el hecho de que el foro de instancia concluyó que la parte querellada-apelante no había presentado oportunamente su contestación a la querella presentada por Rivera Pagán, o la correspondiente alegación responsiva, de conformidad con el procedimiento sumario establecido en la Ley Núm. 2, supra.
i.
Primeramente, nos corresponde determinar si el presente caso podía o no dilucidarse de conformidad con la Ley Núm. 2, supra.
Mediante diferentes disposiciones estatutarias y enmiendas, el alcance de la Ley Núm. 2, supra, se ha extendido para que el procedimiento judicial sumario pueda utilizarse con relación a diversas reclamaciones: (1) cualesquiera derechos o beneficios laborales; (2) cualesquiera sumas por concepto de compensación por trabajo o labor realizado; (3) cualesquiera compensaciones en caso de que dicho obrero o empleado hubiese sido despedido de su empleo sin justa causa; o (4) cuando el legislador lo haya dispuesto expresamente al aprobar otras leyes protectoras de los trabajadores. Rivera v. Insular Wire Products, supra, a la pág. 1170. Es decir, ni la ley ni la jurisprudencia han extendido el alcance de la Ley Núm. 2, supra, a reclamaciones por daños y perjuicios bajo el Art. 1802 del Código Civil, supra.
Así mismo, en Berríos Heredia v. González, op. de 15 de junio de 2000, 2000 J.T.S.I02, 151 D.P.R._ (2000), nuestro Tribunal Supremo tuvo la oportunidad de considerar si una reclamación por concepto de angustias mentales podía ser tramitada de forma sumaria. En dicho caso, se reconoció la dificultad procesal que pudiera originar la bifurcación de las reclamaciones laborales en un proceso sumario y otro ordinario, por lo que se determinó que cuando una reclamación laboral instada bajo el proceso sumario que establece la Ley Núm.2 planteara varias causas de acción, cuya resolución resultara compleja, todas las causas de acción incluidas en la querella debían ser tramitadas en un juicio ordinario. A esos efectos, expresó el Tribunal:

“...en aquellos procedimientos judiciales instados bajo leyes de índole laboral, que, por su naturaleza 
*712
particularmente compleja, como por ejemplo, cuando se reclama compensación por angustias mentales, y que, a la luz de los criterios enumerados previamente, su correcta adjudicación requiera que alguna de las reclamaciones sea adjudicada de forma ordinaria, todas las reclamaciones incluidas con ella pueden ser sustraídas del proceso sumario y ser resueltas deforma ordinaria. No obstante, cuando el tribunal opte por este curso de acción, deberá simultáneamente tomar las medidas correspondientes para que la acción o acciones incoadas se incluyan en un calendario especial para que sean atendidas con carácter prioritario. Así evitamos que la conversión del proceso perjudique el interés del obrero de que se haga una adjudicación rápida de su reclamación. ”

La presente acción judicial envuelve una reclamación laboral de despido injustificado bajo Ley 80 y discrimen por edad bajo la ley 100 y una reclamación de daños y perjuicios, que por su naturaleza múltiple, no puede dilucidarse mediante el procedimiento sumario creado por la Ley Núm. 2, supra. Por lo tanto, el Tribunal de Primera Instancia incurrió en error al dilucidar el caso vía el procedimiento sumario.
ii.
La anterior conclusión nos lleva a determinar que también incurrió en error el foro de instancia al determinar que la parte querellada-apelante no contestó a tiempo la querella presentada. Al no aplicar el procedimiento sumario a la presente causa de acción, la parte querellada-apelante tenía veinte (20) días para presentar su alegación respondiente y no diez (10) días como dispone la citada Ley Núm. 2, See. 3, 32 L.P.R.A sec. 3120. Veamos.
Veamos un recuento del tracto procesal del caso de autos:
“• Rivera Pagán presentó la querella que genera el presente recurso en 16 de mayo de 2001.
• Trece (13) días más tarde, en 29 de mayo de 2001, la parte querellada-apelante presentó una Moción Solicitando Extensión de Término para Contestar o de Otra Manera Alegar, hasta el 5 de junio de 2001. ”
• En 5 de junio de 2001, el foro de instancia dictó Orden concediendo la solicitud de término adicional para alegar, notificada la misma en 12 de junio de 2001, vencido el término solicitado.
• En 15 de junio de 2001, la parte querellada-apelante trasladó el caso para el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, a tenor con la Sección 1446 del Título 28 del Código de los Estados Unidos, 28 U.S.C. see. 1446, por lo que quedaba suspendido el caso en el Tribunal de Primera Instancia, hasta tanto el foro federal dispusiera de la reclamación.
• Dicho traslado fue notificado al Tribunal de Primera Instancia el mismo día, 15 de junio de 2001.
• No fue hasta el 16 de noviembre de 2001 que el foro de instancia dictó Sentencia decretando el cierre del caso.
• En 31 de marzo de 2002, el Tribunal de Distrito Federal emitió Opinión y Orden, notificada en 4 de abril de 2002, en la que ordenó la devolución de la querella al Tribunal de Primera Instancia.
• A los seis (6) días de notificada la devolución del caso al foro de instancia, en 10 de abril de 2002, la parte querellada-apelada presentó una "Solicitud de Desestimación y /o Sentencia Sumaria y/o Paralización Mientras se Cumple con el Acuerdo Contractual de Mediación y Arbitraje. ”
• En 11 de abril de 2002, Rivera Pagán presentó moción solicitando se dicte sentencia.
*713 • En 26 de junio de 2002 dictó sentencia y declaró HA LUGAR la querella presentada, fundamentado en que la parte querellada-apelada no haber presentado alegación respondiente alguna, de conformidad con la Ley Núm.2, supra.
Como podemos apreciar, la parte querellada-apelante, oportunamente solicitó un término adicional hasta el 5 de junio de 2001 para alegar o contestar la querella presentada, a lo que el foro de instancia concedió dicho reclamo, pero dicha determinación fue concedida y notificada, una vez vencido el término que ellos habían solicitado, en 12 de junio de 2001, por lo que es a partir de dicho día que nuevamente comienzan a correr los términos para que la parte querellada-apelante presentara su alegación responsiva y no se encontraba dicha parte en rebeldía.
Al trasladarse el caso para el foro federal, quedaron suspendidos los procedimientos en el foro de instancia, por lo que nuevamente se interrumpieron los términos.
Una vez el Tribunal Federal ordena el trasladado del caso al foro de instancia, transcurridos sólo seis (6) días desde su notificación, en 10 de abril de 2002, la parte querellada-apelante oportunamente presentó "Solicitud de Desestimación y/o Sentencia Sumaria y/o Paralización Mientras se Cumple con el Acuerdo Contractual de Mediación y Arbitraje". Sin embargo, el foro de instancia nunca se expresó ni dictó Orden o Resolución alguna para con dicha solicitud de desestimación y/o sentencia sumaria y/o paralización.
Cuando en 11 de abril de 2002, Rivera Pagán presentó moción solicitando se dicte sentencia por no haber contestado la parte querellada-apelante dentro del término de diez días establecidos en la Ley Núm. 2, supra, lo hizo prematuramente. Simplemente, porque la parte querellada-apelada tenía veinte (20) días, a partir de la notificación del traslado, para presentar su alegación responsiva y Rivera Pagán presentó la referida solicitud al séptimo día de notificado el traslado. 
Por lo tanto, erró también el foro de instancia al determinar prematuramente que la parte querellada-apelada no había presentado alegación respondiente y dictar sentencia de conformidad con la Ley Núm.2, supra.
iii.
En el segundo señalamiento de error, indica la parte querellada-apelante que incurrió en error el foro de instancia al denegar la solicitud de desestimación y/o sentencia sumaria en contravención de las disposiciones de la "Federal Arbitration Act", habida la existencia de un acuerdo de mediación y arbitraje válido.
En 5 de mayo de 1999, el Rivera Pagán firmó una carta de oferta de empleo de la parte querellada-apelante. Ese mismo día, firmó además un acuerdo con la querellada-apelante en la que acordaron someter a mediación y arbitraje toda disputa relacionada con el empleo de Rivera o con la terminación del mismo. Véase Apelación, Anejo 20, págs. 174-181.
Consideremos, en primer lugar, si la Ley Federal de Arbitraje (Federal Arbitration Act), supra, es aplicable al caso de autos.
Las cláusulas de arbitraje son válidas, irrevocables y .mandatorias al amparo de la Ley Federal de Arbitraje, supra, si son parte de un contrato marítimo o de un contrato que evidencie una transacción que envuelva comercio, excepto si concurren aquellas circunstancias existentes en ley o en equidad para la revocación de cualquier contrato. 9 U.S.C. see. 2. A esos efectos se define el término comercio en la sección 1 del referido cuerpo legal como:
"... commerce among the several States or withforeing nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any *714 State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."
Jurisprudencialmente se ha resuelto que dicha exclusión cobija sólo a contratos de empleo de aquellos trabajadores envueltos en la transportación interestatal de bienes. Albert v. National Cash Register Co., 874 F. Supp. 1324.
Aplicando dichos principios al caso de marras, concluimos que el contrato de empleo suscrito entre la querellada-apelante y Rivera Pagán evidencia una transacción que envuelve comercio y no está expresamente excluida de su cubierta. Contrato, que como hemos visto, no está exceptuado de la cobertura de la Ley Federal de Arbitraje, supra. Por lo tanto, dicha ley es aplicable a la situación de hechos ante nuestra consideración.
Una vez resuelto que la Ley Federal de Arbitraje es aplicable al caso de autos, determinemos, pues, si podía Rivera Pagán obviar el procedimiento de mediación y arbitraje estatuido en el acuerdo y acudir directamente al foro judicial.
La Ley Federal de Arbitraje, supra, aplica tanto en los tribunales federales como en los estatales. Perry v. Thomas, 482 U.S. 483, 489; Southland Corp. v. Keating, 465 U.S. 1, 12 (1984). Es más, si la transacción entre las partes litigantes envuelve el comercio interestatal, la Ley Federal de Arbitraje, supra, ocupa el campo. Howard Fields & Associates v. Grand Wailea Co., 848 F. Supp. 890.
Existe una fuerte política federal que favorece los acuerdos de arbitraje. Más aún, cualquier duda acerca del alcance de controversias que pueden dilucidarse mediante arbitraje debe resolverse a favor del arbitraje. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).
De igual forma, en Puerto Rico hay una enérgica política pública que favorece el arbitraje como método alterno para la solución de disputas. De ordinario, no puede obviarse el procedimiento de arbitraje prescrito en un contrato, pues dicha política está ligada a la doctrina de la autonomía de los contratantes enunciada en el Artículo 1207 de nuestro Código Civil, 31 L.P.R.A see. 3372. Medina Betancourt v. La Cruz Azul de Puerto Rico, Op. de 30 de noviembre de 2001, 2001 J.T.S. 168, 155 D.P.R._; Paine Webber v. Service Concepts, Inc., Op. de 13 de junio de 2000, 2000 J.T.S. 100, 151 D.P.R._.
Las reclamaciones fundadas en derechos estatutarios pueden ser objeto de un acuerdo de arbitraje mandatorio entre las partes de acuerdo a la Ley Federal de Arbitraje, supra. Al así hacerlo, la parte no renuncia a sus derechos sustantivos salvaguardados por el estatuto; sólo deja la resolución de la disputa a un árbitro. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985); Gilmer v. Interstate Johnson Lane, 500 U.S. 20, 37 (1991).
El Tribunal Supremo de los Estados Unidos ha resuelto que una vez una parte ha pactado que cierta controversia sea arbitrable, hay que forzosamente acudir al procedimiento de arbitraje, a menos que el Congreso haya demostrado su intención de prohibir la renuncia de remedios judiciales para la reclamación de los derechos estatutarios en controversia, en el texto de la ley o en su historial legislativo. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., supra, a la pág. 628. En este último caso se resolvió que al redactar la "Age Discrimination in Employment Act of 1967" (ADEA), 29 U.S.C. sec. 621 et seq., el Congreso no excluyó el arbitraje de reclamaciones al amparo de dicha ley, si así lo pactaron las partes contratantes. Por lo tanto, una vez acordado el arbitraje, los tribunales carecen de discreción respecto a su eficacia y tienen que dar cumplimiento al arbitraje acordado.
Por otro lado, la sección 3 de la Ley Federal de Arbitraje, supra, provee para que a petición de parte, cuando *715 una causa de acción es presentada en los tribunales referente a una controversia que se pactó fuera arbitrable, se paralicen los procedimientos judiciales hasta que se efectúe el arbitraje. Shearson American Express, Inc. v. McMahon, 482 U.S. 220, 226; Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218-219 (1993).
En el Acuerdo de Mediación y Arbitraje suscrito entre las partes, se encuentran cubiertas cualesquiera reclamaciones que surjan de, o en la relación de empleo, la terminación de empleo, incumplimiento de contrato y discrimen en el empleo. Por lo tanto, la reclamación de Rivera Pagan claramente está comprendida dentro de los asuntos que las partes pactaron fueran arbitrables. Rivera Pagán voluntariamente renunció a que su reclamación se viese en el foro judicial y, por el contrario, pactó que se dilucidara por arbitraje. En aras de la política federal que favorece el arbitraje, forzoso es concluir que procede la paralización del proceso judicial hasta tanto se efectúe el arbitraje, por lo que erró el foro de instancia al asumir jurisdicción sobre la presente causa de acción. Shearson American Express, Inc. v. McMahon, supra; Dean Witter Reynolds Inc. v. Byrd, supra.
DICTAMEN
A la luz de la situación fáctica y de las normas de derecho enunciadas, resolvemos que incurrió en error el Tribunal de Primera Instancia:
Primero, al dilucidar la presente causa de acción vía el procedimiento sumario establecido en la Ley Núm. 2, supra.
Segundo, al determinar prematuramente que la parte querellada-apelante no había presentado alegación respondiente.
Tercero, al asumir jurisdicción sobre el caso, cuando existía un Acuerdo de Mediación y Arbitraje válido, suscrito entre las partes el cual establece el procedimiento a seguir para la reclamación objeto de la presente causa de acción.
Por los fundamentos antes expuestos, se dicta sentencia para REVOCAR la sentencia apelada.
NOTIFIQUESE.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
Leda. Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 15
1. Mediante Resolución de 19 de julio de 2002, determinamos que, debido a que la sentencia de la cual se apela es una final, el recurso presentado no es un certiorari, sino una apelación, por lo que se le asignó el número correspondiente, KLAN2002-00744.
2. "...Plaintiff alleged that Defendants discriminatory acts also violated the ADEA. However, Plaintiff neither cited the federal act specifically nor did he request any remedy under federal legislation. As a matter of fact, this passing reference to the ADEA was made in the factual description section of the complaint. Plaintiff did not include any such reference to any federal law anywhere in his statement of his first and second causes of action. [...] The mere allegation that Defendants also violated a federal statute, without requesting any remedy for such violation, does not raise a federal question...

U

*716
Even if however, we were to determine that the Plaintiff’s passing reference to the ADEA did in fact constitute the inclusion of a federal cause of action in his complaint, we would have to consider Plaintiff s statements in his motion to remand as a request for an amendment of his complaint and/or the dismissal without prejudice of his federal claim. ”

3. Aun cuando se aplicaran los términos del procedimiento sumario, dicha solicitud fue presentada prematuramente.